**IN THE UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**WACO DIVISION**

GABRIEL DE LA VEGA,

    Plaintiff,

  v.

            Case No. 6:19-cv-00617-ADA

GOOGLE LLC,

    Defendant.

**GOOGLE'S MOTION TO DISMISS UNDER FEDERAL RULE 12(B)(6)**
**FOR FAILURE TO STATE A CLAIM FOR RELIEF**

# TABLE OF CONTENTS

I.     Introduction ................................................................................................................1

II.    Background ................................................................................................................2

     A.    Nature and Stage of the Proceedings ........................................................2

     B.    The '986 Patent and Asserted Claims .......................................................2

III.   Legal Standards for Motions to Dismiss ...................................................................4

IV.   Argument ..................................................................................................................4

     A.    The Patent Office Decision to Revive the Application Issuing as the '986 Patent Was Arbitrary and Capricious, and Should be Overturned .....................................4

     B.    The Complaint Fails to Set Forth a Plausible Claim for Direct Infringement ........7

          1.    The Complaint Fails to Allege How the Coupling Step or Means Is Met ...7

          2.    The Complaint Relies Upon Activities of Multiple Actors Without Allegations that Support Joint Infringement ................................................9

          a.    The Allegations of the Complaint Show That No Single Actor Performs the Steps of Claim 1 and There Are No Allegations to Support Joint Infringement .....................................................................10

          b.    The Complaint Fails to Address Any Limitation of Claim 9, And There Are No Allegations to Support Joint Infringement ...................................13

          3.    The Complaint Fails to State a Plausible Claim for Direct Infringement ..15

     C.    The Complaint's Allegations of Indirect Infringement Fail to Set Forth a Plausible Claim and Should Be Dismissed ................................................15

          1.    Without Direct Infringement, There Can Be No Indirect Infringement ....15

          2.    Any Claim of Pre-Suit Indirect Infringement is Unsupported for Failure to Plead Pre-Suit Knowledge of the '986 Patent .......................................16

          3.    The Complaint Fails to Allege the Requisite Specific Intent and Action to Support a Plausible Claim for Induced Infringement ...........................16

          4.    The Complaint Alleges Facts Foreclosing a Plausible Claim for Contributory Infringement .......................................................................18

V.    Conclusion ..............................................................................................................19

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Affinity Labs of Tex., LLC v. Toyota Motor North America, Inc.*,
    No. 13-365-WSS, 2014 WL 2892285 (W.D. Tex. May 12, 2014).....................................16, 17

*Akamai Techs., Inc. v. Limelight Networks, Inc.*,
    797 F.3d 1020 (Fed. Cir. 2015) (en banc)..........................................................................7, 10

*Aristocrat Techs. Australia PTY Ltd. v. International Game-Technology*,
    543 F.3d 657 (Fed. Cir. 2008).............................................................................................6, 7

*Artrip v. Ball Corp.*,
    735 Fed. Appx. 708 (Fed. Cir. 2018)...................................................................................7, 8

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)......................................................................................................4, 9, 16

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)......................................................................................................4, 9, 16

*In re Bill of Lading*,
    681 F.3d 1323 (Fed. Cir. 2012)...................................................................................15, 17, 18

*Camp v. Pitts*,
    411 U.S. 138 (1973).................................................................................................................5

*Centillion Data Sys., LLC v. Qwest Communs. Int'l*,
    631 F.3d 1279 (Fed. Cir. 2011)........................................................................................14, 15

*Cleveland Clinic Found. v. True Health Diagnostics LLC*,
    859 F.3d 1352 (Fed. Cir. 2017)........................................................................................17, 18

*Commil USA, LLC v. Cisco Sys., Inc.*,
    135 S. Ct. 1920 (2015)...........................................................................................................16

*Dickinson v. Zurko*,
    527 U.S. 150 (1999).................................................................................................................4

*Dynacore Holdings Corp. v. U.S. Philips Corp.*,
    363 F.3d 1263 (Fed. Cir. 2004)..............................................................................................15

*Fields Hybrids, LLC v. Toyota Motor Corp.*,
    No. Civ. 03-4121, 2005 WL 189710 (D. Minn. Jan. 27, 2005)...........................................5, 6

## TABLE OF AUTHORITIES

*Page(s):*

*Grecia v. McDonald's Corp.*,
    724 Fed. Appx. 942 (Fed. Cir. 2018) ......................................................................14

*Intellectual Ventures I LLC v. Motorola Mobility LLC*,
    870 F.3d 1302 (Fed. Cir. 2017)..............................................................................14

*Iron Oak Techs., LLC v. Dell, Inc.*,
    No. 17-999-RP, 2018 WL 1631396 (W.D. Tex. Apr. 4, 2018) .............................18

*Lawman Armor Corp. v. Simon*,
    74 U.S.P.Q.2d 1633, 2005 WL 1176973 (E.D. Mich. Mar. 29, 2005) .................5, 6

*Lee v. Verizon Communs., Inc.*,
    837 F.3d 523 (5th Cir. 2016) ..................................................................................4

*Lyda v. CBS Corp.*,
    838 F.3d 1331 (Fed. Cir. 2017)..................................................................8, 10, 12, 13

*Meetrix IP, LLC v. Cisco Sys., Inc.*,
    No. 18-309-LY, 2018 WL 8261315 (W.D. Tex. Nov. 30, 2018)..........................16

*New York University v. Autodesk, Inc.*,
    495 F. Supp.2d 369 (S.D.N.Y. 2007).....................................................................5, 6

*OIP Techs., Inc. v. Amazon.com, Inc.*,
    788 F.3d 1359 (Fed. Cir. 2015)..........................................................................2, 4, 5

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
    551 U.S. 308 (2007)...............................................................................................2, 5

**Statutes**

37 C.F.R. § 1.137(b) ...................................................................................................4, 6

5 U.S.C. § 706(2)(A)......................................................................................................4

35 U.S.C. § 271(c) .......................................................................................................18

35 U.S.C. § 282..............................................................................................................6

## TABLE OF AUTHORITIES

*Page(s):*

**Other Authorities**

Federal Rule of Civil Procedure 8(a)(2) ..........................................................................................4

Federal Rule of Civil Procedure 12(b)(6) ...............................................................................1, 5

## I.     INTRODUCTION

Plaintiff brings the present case after abandoning his patent application for more than eight years (from 2008-2017), and petitioning to revive it a year and a half after the Complaint admits the accused instrumentality, YouTube Live, was launched, claiming the delay that led to the abandonment was unintentional.  The undisputed administrative record, which is properly considered on a motion to dismiss, shows that the Patent Office's decision to revive the application violated the Patent Office's own rules regarding unintentional delay.  The Patent Office's grant of the petition to revive was therefore arbitrary, capricious, and an abuse of discretion that must be set aside under the Administrative Procedure Act ("APA").  When improper agency action is set aside under the APA, the asserted patent is invalid because any alleged invention was abandoned.

Further, the Complaint fails to adequately plead a claim under *Iqbal*/*Twombly* because it merely recites or rephrases the asserted claims while alleging legal conclusions of infringement. The sparse facts alleged fail to state a claim for direct infringement because: (a) they ignore claim limitations altogether; or (b) at best, they suggest the acts of multiple parties are involved, but lack any allegations to support a viable claim of joint infringement.

The Complaint also fails to state a claim for indirect infringement.  There are no allegations that would support a plausible claim for direct infringement, which is a prerequisite to an indirect infringement claim.  Further, the Complaint (a) fails to provide any factual allegations to support the specific intent required for inducement; (b) fails to identify any basis for pre-suit indirect infringement; and (c) identifies substantial noninfringing uses of the accused functionality, which foreclose a claim for contributory infringement.

Google hereby moves to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(6).

## II.  BACKGROUND

### A.  Nature and Stage of the Proceedings

Plaintiff filed its Complaint (Dkt. 1) against Google LLC on October 16, 2019, alleging

infringement of U.S. Patent No. 10,205,986 (the "'986 patent") (Dkt. 1-1) by YouTube Live.

The Complaint asserts direct infringement (¶¶ 21, 25) and indirect infringement (¶ 21), including

both induced infringement (¶¶ 24, 26-30) and contributory infringement (¶¶ 31-35).

### B.  The '986 Patent and Asserted Claims

U.S. Patent Application No. 10/911,144, which issued as the '986 patent, was filed

August 4, 2004.  '986 patent at Cover.  The Patent Office issued a final rejection on December

11, 2008.  Ex. A (Prosecution History Excerpts) at 2008-12-11 Final Rejection.  Applicant did

not respond to the Patent Office's final rejection.  After confirming with the Applicant's attorney

— "Mr. Lubecki confirmed that no response to the Office Action mailed on 12/11/2008 has been

filed" — the Examiner issued a Notice of Abandonment no later than June 15, 2009.  Ex. A,

2009-06-15 Abandonment at 2.[1]  Although the application had been abandoned for more than

eight years, in December 2017 Plaintiff sought revival, a year and a half *after* the Complaint

alleges the accused YouTube Live was launched.  *See* Ex. A, 2017-12-19 Petition; Complaint

¶ 25 (citing June 2016 alleged launch of YouTube Live app).  The Applicant's statement of

alleged unintentional delay admitted that the delay was caused by an "inability to provide

payment to Applicant's attorney for legal fees" and "lack of funds."  Ex. A, 2017-12-19

Statement of Unintentional Delay at 2.  There is no indication that the Applicant or his attorney

---

[1] The patent and its prosecution are properly considered by a court in ruling on a 12(b)(6)
motion.  *See e.g., Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007) (must
consider entire complaint including documents incorporated into it and may take judicial notice
of other matters); *OIP Techs., Inc. v. Amazon.com, Inc.*, 788 F.3d 1359, 1363 (Fed. Cir. 2015)
(considering prosecution in affirming § 101 judgment on pleadings).

were unaware that the failure to respond in 2008 would abandon the application.

During the extensive prosecution of its claims, Applicant was required to substantially amend its claims to introduce several limitations that he does not and cannot show are performed by or at the direction of Google.  Claim 1, with the language that the applicant added to gain allowance underlined, recites:

> A method for selecting <u>streaming</u> image content from a network comprising:
>
> providing <u>real-time streaming</u> image content <u>output by a camera</u> from at least one mobile content provider;
>
> coupling said <u>real-time streaming</u> image content from said mobile content provider <u>camera</u> to the network <u>using a networked computer in conjunction with cellular telephony, wherein said real-time streaming image content provided by said mobile content provider is acquired while in motion within the cellular telephony coverage area</u>;
>
> presenting said <u>real-time streaming</u> image content from said mobile content provider <u>on a server homepage</u> for selection; and
>
> selecting said <u>real-time streaming</u> image content from said <u>at least one</u> mobile content provider <u>presented on said homepage for viewing in real-time over the Internet, wherein a viewer filters the real-time streaming image content by selection criteria comprising at least one of a location, a name, a type, and an audio commentary</u>.

*See* '986 patent at 9:20-41 (emphasis added); Ex. A, 2007-02-06 Amend. to the Claims at 3, 2007-08-08 Amend. to the Claims at 2, 2007-12-14 Amend. to the Claims at 2, 2008-07-23 Amend. to the Claims at 2, 2017-12-19 Amend. to the Claims at 2.  System claim 9, the only other claim mentioned in the Complaint recites similar elements as "means for" performing the steps of claim 1 and was similarly heavily amended.  '986 patent at 10:0-32; Ex. A at 2007-02-06 Amend. to the Claims at 4, 2007-08-08 Amend. to the Claims at 3, 2007-12-14 Amend. to the Claims at 3, 2008-07-23 Amend. to the Claims at 3, 2017-12-19 Amend. to the Claims at 3-4.  As further discussed herein, Google refers to these limitations by the recited step (e.g., the "providing step," the "coupling step," the "presenting step," and the "selecting step").

3

III.    **LEGAL STANDARDS FOR MOTIONS TO DISMISS**

"To survive a motion to dismiss, a complaint must contain sufficient *factual* matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (emphasis added) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  Federal Rule of Civil Procedure 8(a)(2) requires that a complaint provide a defendant fair notice of the plaintiff's claim and the grounds relied upon.  This obligation "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do…." *Id.* at 555 (citations omitted).  "On a motion to dismiss, courts are not bound to accept as true a legal conclusion couched as a factual allegation." *Id.* (citation omitted); *see also Iqbal*, 556 U.S. at 678-79.  Regional circuit law applies when reviewing a Rule 12 motion to dismiss. *OIP Techs., Inc. v. Amazon.com, Inc.*, 788 F.3d 1359, 1362 (Fed. Cir. 2015).  In the Fifth Circuit, "the court applies the *Twombly*-plausibility standard." *Lee v. Verizon Communs., Inc.*, 837 F.3d 523, 533 (5th Cir. 2016).

IV.    **ARGUMENT**

   A. **The Patent Office Decision to Revive the Application Issuing as the '986 Patent Was Arbitrary and Capricious, and Should be Overturned**

The Patent Office's decision to allow revival of the application leading to the '986 patent should be set aside as unlawful under the Administrative Procedure Act ("APA").

The Patent Office's revival of the application under 37 C.F.R. § 1.137(b)(4), which only allows for revival if the "entire delay" was unintentional, was arbitrary and capricious, as well as an abuse of discretion, subject to this Court's review under the APA, 5 U.S.C. § 706(2)(A).[2]  Under the APA, a court "must 'hold unlawful and set aside' PTO actions found to

---

[2] The APA applies to decisions of the Patent Office.  *See Dickinson v. Zurko*, 527 U.S. 150, 164 (1999).

be 'arbitrary, capricious, an abuse of discretion, or others not in accordance with the law." *New York University v. Autodesk, Inc.*, 495 F. Supp.2d 369, 373 (S.D.N.Y. 2007) ("NYU"); *see also Lawman Armor Corp. v. Simon*, 74 U.S.P.Q.2d 1633, 2005 WL 1176973, at *5 (E.D. Mich. Mar. 29, 2005).  "In applying that standard, the focal point for judicial review should be the administrative record already in existence, not some new record made initially in the reviewing court." *Camp v. Pitts*, 411 U.S. 138 (1973).  Here, that record is clear from the prosecution history itself, which is properly considered by the Court in ruling on a motion to dismiss.  *See e.g., Tellabs,* 551 U.S. at 308; *OIP Techs.*, 788 F.3d at 1363.  There are no disputed facts and dismissal is warranted under Rule 12(b)(6).

The Examiner sent a Notice of Abandonment in 2009, but only after confirming with the prosecuting attorney (Mr. Lubecki) that the Applicant had not sent a response. Ex. A, 2009-06-15 Abandonment at 2.  The record thus reflects that Applicant's attorney was aware of the need to respond and this knowledge is properly imputed to the Applicant.  *See e.g., Fields Hybrids, LLC v. Toyota Motor Corp.,* No. Civ. 03-4121, 2005 WL 189710, *7 (D. Minn. Jan. 27, 2005). Under quite similar facts, where an Examiner confirmed with the Applicant's representative that no action had been taken to respond, several courts have found that the delay could not be considered unintentional.  *See e.g., Lawman*, 2005 WL 1176973, at *5; *NYU*, 495 F. Supp. 2d at 374.

Moreover, in the petition to revive the abandoned application, the Applicant asserted that the basis for contending that the delay was unintentional was that "Applicant was unable to provide a response due to inability to provide payment to Applicant's attorney for legal fees." Ex. A, 2017-12-19 Statement of Unintentional Delay at 2.  Under the Patent Office's own rules, however, the very reason the Applicant offered as the basis for unintentional delay is expressly

called out as showing the delay was deliberate and ***not*** unintentional.  "A delay resulting from a deliberately chosen course of action on the part of the applicant does not become an 'unintentional' delay within the meaning of 37 CFR 1.137(b) because: . . . (E) the applicant remains interested in eventually obtaining a patent, ***but simply seeks to defer patent fees and patent prosecution expenses***."   Ex. B – Manual of Patent Examining Procedure ("MPEP") § 711.03(c) (9th Ed. Rev. 7) at II.C. (II.  Petitions to Revive an Abandoned Application or Accept Late Payment of Issue Fee, subsection C. Unintentional Delay) (available at http://mpep.uspto.gov/RDMS/MPEP/current#/current/d0e81012.html) (emphasis added).[3]

Under the Patent Office's own interpretation of its regulations, the inquiry is whether the course of action that resulted in the delay was unintentional, not whether the abandonment was unintentional.  *Fields Hybrids*, 2005 WL 189710, *7; *Lawman*, 2005 WL 1176973, at *6-7.  Based on the undisputed administrative record, the delay was not unintentional and the Patent Office acted in disregard of its own rules in reviving the abandoned application.  Such failure to follow its own rules and disregard of the Examiner's confirmation with Applicant's attorney, who knew of the deadline and affirmed that no action had been taken, is clearly arbitrary and capricious, as well as an abuse of discretion, renders the Patent Office's actions in reviving the application illegal and it must be set aside.  *See e.g., NYU*, 495F. Supp. 2d at 374-75.[4]

---

[3] This same text appeared in the MPEP in 2008 when the application was abandoned.  Ex. C – MPEP (8th Ed. Rev. 6) § 711.03(c) at 700-192.

[4] Google is mindful of the decision in *Aristocrat Techs. Australia PTY Ltd. v. International Game-Technology*, 543 F.3d 657 (Fed. Cir. 2008), but that case is inapplicable here as Google is not asserting improper revival as a defense under 35 U.S.C. § 282 in the present motion.  In addition, the present case with an eight-year delay is not an instance of mere procedural irregularities where a deadline may have been missed by as little as one day.  *Id.* at 658 (noting filing fee was received January 11, 2000 when it was due January 10, 2000) & 663 (referring to procedural irregularities and minor transgressions).  Moreover, *Aristocrat* only mentions the APA in passing and limits its inapplicability to the facts of the case (including the very short and

Accordingly, Google respectfully requests that the Court dismiss Plaintiff's Complaint for failure to state a claim for relief.

### B.  The Complaint Fails to Set Forth a Plausible Claim for Direct Infringement

Plaintiff's Complaint should also be dismissed because it fails to plead factual allegations that are sufficient to support a plausible claim for direct infringement.  The *Iqbal/Twombly* plausibility standard applies to claims of direct infringement of a patent.  *See Artrip v. Ball Corp.*, 735 Fed. Appx. 708, 714 n.4 (Fed. Cir. 2018).  Moreover, direct infringement only "occurs where all steps of a claimed method are performed by or attributable to a single entity." *Akamai Techs., Inc. v. Limelight Networks, Inc.*, 797 F.3d 1020, 1022 (Fed. Cir. 2015) (en banc).

Apart from reciting the claim language and pure legal conclusions (Complaint ¶¶ 20-21), Plaintiff's conclusory allegations regarding direct infringement are set forth in the Complaint at paragraphs 23 and 25.  Even when read in the light most favorable to Plaintiff, these allegations fail to state a plausible claim for direct infringement for several reasons.

### 1.  The Complaint Fails to Allege How the Coupling Step or Means Is Met

Plaintiff's Complaint should be dismissed because it fails to include any allegations that would support a plausible claim that anyone meets the "coupling step" of claim 1 (or the "means for coupling" in claim 9),[5] which are the only claims identified in the Complaint.

The "coupling step" of claim 1 requires that a "mobile content provider" (content providing user) couple "real-time streaming image content" and that:

---

unintentional delay).  *Id.* at 664.  Nothing in *Aristocrat* resembles the lengthy delay here and the Patent Office's disregard of its own rules.

[5] Claim 9 recites a "means for coupling" that includes these same functions that are recited in the "coupling step" of claim 1 ('986 patent at 10:14-20), yet the Complaint makes no allegations regarding how those functions are met or how any of the other means recited in claim 9 are met. As the Complaint fails to identify who or what is performing the steps in claim 1, it likewise fails to address the functions of claim 9, much less the corresponding structure.

- the coupling is done "*using a networked computer in conjunction with cellular telephony*" and

- the content that is coupled "*is acquired while said mobile content provider is in motion within the cellular telephony coverage area*."

*See* Complaint ¶ 11; '986 patent at 9:25-31 (emphasis added).  As noted above, these additional limitations were added to overcome rejections based on the prior art.  *See* Section II.B.  The Complaint fails to allege that the coupling limitation is ever met, simply asserting that Google provides a YouTube application "to allow users to take live streaming video and upload them…."  *See id.* ¶¶ 23, 25 (at p. 10-13).  None of the web page excerpts included in the Complaint indicate how coupling is done "in conjunction with cellular telephony" or that the content is "acquired while in motion within the cellular telephony coverage area."  *See, e.g.*, Complaint ¶ 25 (at p. 8-9) (failing to identify any content provided via the YouTube app, much less using cellular telephony, and showing no live streams provided while in motion within cell areas).  The Complaint also fails to make any mention of who or what is performing the coupling step.  Without any identification of the required "cellular telephony," "cellular telephony coverage area," "acquisition while in motion," or who allegedly performs the multi-part coupling step, Google is not "on notice as to what [it] must defend."  *Artrip*, 735 Fed. Appx. at 714.  Thus, dismissal for failure to state a claim of direct infringement is proper for this reason alone.

The complaint vaguely asserts that Google "owns, uses, operates, advertises, controls, sells, tests, and/or otherwise provides" infringing systems and methods, but as explained below fails to provide any evidence or assertion that Google practices each limitation of claims 1 or 9.  Such "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Lyda v. CBS Corp.*, 838 F.3d 1331, 1337 (Fed. Cir. 2017) (citing

*Iqbal*, 556 U.S. at 678 and *Twombly*, 550 U.S. at 555).  Even if Google were to use or test portions of functionality that allegedly met these limitations, which the Complaint fails to allege, the Complaint fails to provide any factual allegation that Google or any other single actor uses or tests such claim features in concert with the other claim limitations such that the entire claim is practiced by a single actor.  As explained above, there is no allegation that Google performs the "coupling step" at all, much less that it does so along with performing the other claim steps.  For example, the Complaint fails to allege that Google or any other single actor performs the selecting step, which would require, at a minimum, that the actor carrying out the coupling step also acts as a viewer to filter content to select the same real-time streaming content acquired in the coupling step (both limitations require the "said real-time streaming image content").

Because the Complaint fails to include any factual allegations to support that the coupling step or coupling means are met, Google respectfully requests that Plaintiff's Complaint be dismissed for failure to state a claim for direct infringement of any claim of the '986 patent.

### 2.   The Complaint Relies Upon Activities of Multiple Actors Without Allegations that Support Joint Infringement

Plaintiff's Complaint should also be dismissed because it fails to include any allegations that would support a plausible claim that any single actor performs the steps of claim 1 or provides the means for performing the same recited functions in clam 9, or any basis for a finding of joint infringement.

To meet the *Twombly/Iqbal* pleading standard for joint infringement by the combined acts of multiple parties, the Complaint must plead "facts sufficient to allow a reasonable inference that all steps of the claimed method are performed and either (1) one party exercises the requisite 'direction and control' over the other's performance or (2) the actors form a joint enterprise such that performance of every step is attributable to the controlling party."  *Lyda*, 838

F.3d at 1339 (applying *Akamai* to affirm 12(b)(6) dismissal).  In *Lyda*, the Federal Circuit

dismissed a complaint that failed to set forth ***factual allegations*** to support assertions in the

complaint that one entity directed or controlled others.  *Id.*  Dismissal was proper because there

were no allegations that could "form the basis of a reasonable inference that each claim step was

performed by or attributable to Defendants."  *Id.*

> **a. The Allegations of the Complaint Show That No Single Actor Performs the Steps of Claim 1 and There Are No Allegations to Support Joint Infringement**

For those limitations of claim 1 that the Complaint even purports to address, the only

allegedly infringing activity identified for most of them refers to actions by two distinct groups

of YouTube users.  For example, the Complaint makes the broad conclusory allegation that the

YouTube application that it alleges is provided by Google allows "***[content provider] users*** to

take live streaming video and upload" it.  Complaint ¶ 23 (emphasis added).  Then it relies on

other "users" to "***view and filter***" the content uploaded by the content provider users.  Complaint

¶ 25 at p. 15 (emphasis added).

On its face, therefore, the Complaint relies upon the acts of multiple users (as shown in

the table below that includes the purported explanation in the Complaint that follows each claim

element).

| Claim Element | Allegation in Complaint | Actors Identified |
|---|---|---|
| A method for selecting streaming image content from a network comprising: | Not addressed in Complaint | None |
| providing real-time streaming image content output by a camera from at least one mobile content provider; | "Description:  **Google** provides an application called YouTube App which **users may download and stream live video** from their mobile device using the camera native to their mobile device." (¶ 25 at 11) | Google and content providing user |

| Claim Element | Allegation in Complaint | Actors Identified |
|---|---|---|
| | (emphasis added) | |
| coupling said real-time streaming image content from said mobile content provider camera to the network using a networked computer in conjunction with cellular telephony, wherein said real-time streaming image content provided by said mobile content provider is acquired while in motion within the cellular telephony coverage area; | Not addressed in Complaint | None |
| presenting said real-time streaming image content from said mobile content provider on a server homepage for selection; and | "Description: **Google** provides an application for **users' mobile devices to view and filter** live streaming videos on the www.youtube.com/live homepage." (¶ 25 at 15) | Google and viewing user |
| selecting said real-time streaming image content from said at least one mobile content provider presented on said homepage for viewing in real-time over the Internet, wherein a viewer filters the real-time streaming image content by selection criteria comprising at least one of a location, a name, a type, and an audio commentary. | Description: **Users** of YouTube can search live streaming videos on the www.youtube.com/live homepage by typing in the name, keyword or type of the video they want to watch. (¶ 25 at 17) | Viewing user |

Therefore, as set forth in the Complaint (and plainly indicated by the claim language), multiple actors are required to meet the limitations of claim 1.  For example, content provider users are required to couple their content to the network using cellular telephony and acquire video content while in motion within a cellular coverage area.  Meanwhile, the viewing user must filter and select content from web pages.  Given that the patent describes streaming "live" content, Plaintiff has failed to provide any reasonable allegation to support that the same user

would be viewing their own live content.

The allegations of the Complaint, even if accepted as true, do not come close to providing factual allegations to support an inference of joint infringement because they do not even suggest that one party exercises direction or control over another or that the actors formed a joint enterprise as required to properly plead joint infringement. *Lyda*, 838 F.3d at 1339 (joint infringement requires pleading "facts sufficient to allow a reasonable inference that all steps of the claimed method are performed and either (1) one party exercises the requisite 'direction and control' over the other's performance or (2) the actors form a joint enterprise such that performance of every step is attributable to the controlling party."). In fact, nothing in the Complaint would meet the *Iqbal*/*Twombly* standard as explained in *Lyda*.

For the "providing step," the Complaint simply alleges that "Google provides an application called YouTube App which users may download and stream live video from their mobile device using the camera native to their mobile device." *Id.* ¶ 25 (at pp. 10-11). The "providing step," however, requires providing content output from a camera from at least one mobile content provider. Thus, the limitation plainly requires the activities of a third party – i.e., content providing user — and there are no allegations that come close to supporting the inferences *Lyda* explains are required to support joint infringement.

Moreover, the Complaint fails to make any factual allegations to support that anyone performs the requirements of the "coupling step" (*see* Section IV.B), much less that the requirements for joint infringement are met. The Complaint is silent on the acts or the actor involved. There is no allegation (or basis for alleging) that Google provides content using a camera and couples the content using a cellular network, particularly where the content must be acquired while in motion within a cellular coverage area. Once again there are no allegations

that would support a plausible inference of joint infringement as required by *Lyda*.

The selecting step requires "wherein a viewer filters the real-time streaming image content by selection criteria comprising at least one of a location, a name, a type, and an audio commentary."  Complaint ¶ 25 at pp. 15-17.  For the "selecting step," the Complaint only alleges that "*[viewing] [u]sers* of YouTube can search live streaming videos on the www.youtube.com/live homepage by typing in the name, keyword or type of the video they want to watch."  Complaint ¶ 25 (at p. 17) (emphasis added).  Again, the allegedly infringing activity requires the acts of different third parties – this time a viewing user — and there are no allegations that come close to supporting the inferences required to support joint infringement.

Despite apparently relying on the acts of multiple entities as allegedly performing the steps of the claimed method (and for some no actor is identified), the Complaint alleges no facts to support a claim for joint infringement.  The Complaint fails to make even conclusory allegations of such direction, control, or joint enterprise, much less allege any facts in support of the same.  Thus, the present case is even more appropriate for dismissal than in *Lyda*, where the court held that dismissal was proper where the complaint "allege[d] conclusively and without factual support that [defendant] directed or controlled the independent contractors who then directed or controlled the unnamed third parties."  *See Lyda*, 838 F.3d at 1340.

### b.  The Complaint Fails to Address Any Limitation of Claim 9, And There Are No Allegations to Support Joint Infringement

The Complaint fails to address if or how the limitations of system claim 9, which recites "means for" limitations analogous to the steps of claim 1, are met.  In that respect, the Complaint's flaws with respect to claim 9 are even more troubling because the Complaint never identifies who provides the means to perform any of the recited functions.

"In order to 'make' a system under § 271(a), [a party] would need to combine all of the

claim elements." *Centillion Data Sys., LLC v. Qwest Communs. Int'l*, 631 F.3d 1279, 1288 (Fed. Cir. 2011).  As indicated above, the Complaint does not allege the system is combined by a single party.  At least the acts of YouTube content providing users and YouTube viewing users are required for, *inter alia*, the functions of the providing, coupling, and selecting steps.  Thus, the Complaint does not plead facts sufficient to support an inference that anyone "makes" the accused system.

Nor does a single party use the alleged system.  To "use" a system, like claim 9, a party must "put the claimed invention into service, i.e., control the system and obtain benefit from it." *Id.* at 1286.  Vicarious liability for use of a system requires that the party allegedly using the system be directed by or act as an agent of the other party.  *See Centillion*, 631 F.3d at 1287.  A Complaint must also plausibly allege facts that the accused infringer "benefits from each element of the claimed system necessary to allege 'use' under § 271," not just some general benefit from the use as a whole.  *Grecia v. McDonald's Corp.*, 724 Fed. Appx. 942, 946 (Fed. Cir. 2018) (applying *Intellectual Ventures I LLC v. Motorola Mobility LLC*, 870 F.3d 1302, 1329 (Fed. Cir. 2017) to affirm 12(b)(6) dismissal)).  The Complaint here meets neither of these requirements.  It neither alleges who controls or puts the system into use nor who benefits from each element of the claimed system.

In the context of claim 9, even if Google supplies the YouTube app, the claimed system cannot be "put into use" until a content providing user couples the content using cellular telephony and acquires the content while in motion in the cellular coverage area, and another viewing user filters and selects that video.  There is no allegation that Google directs or controls those users to perform such functions, nor are those users acting as agents on Google's behalf. Therefore, Google does not "use" system claim 9.  *See Centillion*, 641 F.3d at 1287.

### 3. The Complaint Fails to State a Plausible Claim for Direct Infringement

Since no single party meets or supplies all the limitations of claims 1 or 9, and the Complaint provides no basis to even infer that YouTube content providing users or YouTube viewing users are directed by, controlled by, in a joint enterprise with, or agents of Google, there is no direct infringement of claims 1 or 9.

### C. The Complaint's Allegations of Indirect Infringement Fail to Set Forth a Plausible Claim and Should Be Dismissed

The Complaint fails to set forth plausible claims of direct infringement and, in the absence of such claims, there can be no indirect infringement.  Also, any claim of pre-suit indirect infringement should be dismissed because there is no allegation that Google had pre-suit knowledge of the '986 patent.  In addition, the Complaint vaguely asserts that Google induced users to infringe (¶¶ 24, 26-30), but provides no evidence that Google induces users to acquire video content while in motion through cellular coverage areas as required by the claims.  Finally, the Complaint establishes substantial noninfringing uses that preclude the claims of contributory infringement (¶¶ 31-35).

### 1. Without Direct Infringement, There Can Be No Indirect Infringement

The Complaint cannot set forth a plausible claim for indirect infringement because it fails to set forth a plausible claim for direct infringement.

To support a claim for indirect infringement, a plaintiff needs to plead "facts sufficient to allow an inference that at least one direct infringer exists."  *In re Bill of Lading*, 681 F.3d 1323, 1336 (Fed. Cir. 2012); *see also Dynacore Holdings Corp. v. U.S. Philips Corp.*, 363 F.3d 1263, 1272 (Fed. Cir. 2004) ("Indirect infringement, whether inducement to infringe or contributory infringement, can only arise in the presence of direct infringement….").

The Complaint's unsupported claims that Google's customers directly infringe are legal

conclusions that need not be accepted as true in the face of a motion to dismiss.  *See Twombly*, 550 U.S. at 555 (citation omitted); *see also Iqbal*, 556 U.S. at 678-79.  As shown above, the Complaint provides no basis to even infer that a single user directly infringes or that there is a basis for a claim for joint infringement.  For that reason alone, Plaintiff cannot state a claim for indirect infringement.

### 2.  Any Claim of Pre-Suit Indirect Infringement is Unsupported for Failure to Plead Pre-Suit Knowledge of the '986 Patent

Indirect infringement (whether contributory or induced), requires knowledge of the patent in suit.  *Commil USA, LLC v. Cisco Sys., Inc.*, 135 S. Ct. 1920, 1926 (2015).  Therefore, a claim of pre-suit indirect infringement requires pre-suit knowledge of the '986 patent.  *See Meetrix IP, LLC v. Cisco Sys., Inc.*, No. 18-309-LY, 2018 WL 8261315, at *3 (W.D. Tex. Nov. 30, 2018) ("because the complaint fails to sufficiently allege pre-suit knowledge, the pre-suit portion of the indirect-infringement claims should be dismissed").  The Complaint fails to plead any facts that plausibly support any allegation that Google had knowledge of the '986 patent prior to the filing of the Complaint, and only asserts that Google had knowledge of the '986 patent "[s]ince at least the filing of the Original Complaint."  Complaint ¶¶ 26, 28, 35.  Any claim of pre-suit indirect infringement should be dismissed.  *See Affinity Labs of Tex., LLC v. Toyota Motor North America, Inc.*, No. 13-365-WSS, 2014 WL 2892285, at *4 (W.D. Tex. May 12, 2014) (allegations insufficient where the "complaint does not express whether the induced infringement claim is limited to patent violations that occurred after the lawsuit was filed, or if the induced infringement claim includes Toyota's conduct or knowledge pre-lawsuit.  Here, Toyota and the Court must speculate as to the extent and scope of Plaintiff's induced infringement claim.").

### 3.  The Complaint Fails to Allege the Requisite Specific Intent and Action to Support a Plausible Claim for Induced Infringement

The Complaint fails to set forth a plausible claim for induced infringement because it

does not allege facts to support an inference of the intent required for induced infringement.  For claims of induced infringement, the complaint must plead facts that plausibly show the defendant had specific intent to cause another to directly infringe and knew the other's act constituted infringement.  *In re Bill of Lading*, 681 F.3d at 1339.

One example is sufficient to show that the Complaint fails to state a claim for induced infringement.  For example, the coupling step/function requires a third party direct infringer of claim 1 or 9 to acquire video content "while in motion within the cellular telephony coverage area"; simply using the YouTube App or even streaming video live from the YouTube App does not infringe.  "The mere knowledge of possible infringement by others does not amount to inducement; specific intent and action to induce infringement must be proven." *Cleveland Clinic Found. v. True Health Diagnostics LLC*, 859 F.3d 1352, 1364 (Fed. Cir. 2017); *see also Affinity*, No. 13-365-WSS, 2014 WL 2892285, at *7 (dismissing induced infringement claims where "Plaintiff does not specify how the marketing and selling activities of Toyota actually induced third-parties to infringe the Asserted Patents.  The complaint generally alleges that Toyota induced its customers to purchase its vehicles, but fails to allege how Toyota induced its customers to use the vehicles in a manner that would violate the Asserted Patents.").  The Complaint alleges no facts that suggest any connection between Google and content providing users to encourage them to acquire content while in motion within a cellular coverage area, much less an intent to have them do so.  *See* Complaint ¶ 29 (citing a website that does not discuss motion or cellular coverage areas).  In fact, as explained above, the Complaint fails to allege anyone is performing the coupling step or coupling means functions.  In order to plausibly plead induced infringement, the law requires a showing that Google induced someone to perform all of the steps that constitute infringement.  The Complaint fails to do so, and therefore "falls short of

showing 'specific intent and action' on behalf" of Google to induce anonymous third-party

infringement of the '986 patent.  *See Cleveland Clinic*, 859 F.3d at 1364.

### 4.   The Complaint Alleges Facts Foreclosing a Plausible Claim for Contributory Infringement

Aside from failing to state a plausible claim for direct infringement, the Complaint

alleges facts that preclude a plausible inference of contributory infringement.

Contributory infringement requires that a defendant sell, offer to sell or import "a

component of a patented machine, manufacture, combination or composition, or a material or

apparatus for use in practicing a patented process, constituting a material part of the

invention, knowing the same to be especially made or especially adapted for use in an

infringement of such patent, and not a staple article or commodity of commerce suitable for

substantial noninfringing use."  35 U.S.C. § 271(c).  Thus, to properly plead a claim for

contributory infringement, the Complaint must allege facts sufficient to infer that any

"component" alleged to provide the basis for contributory infringement has no substantial

noninfringing use.  *In re Bill of Lading*, 681 F.3d at 1337; *see also Iron Oak Techs., LLC v. Dell,

Inc.*, No. 17-999-RP, 2018 WL 1631396, at *2 (W.D. Tex. Apr. 4, 2018) (dismissing

contributory infringement claim because "conclusory allegation that '[t]he components provided

by [Dell] are not staple articles of commerce suitable for substantial non-fringing use,' (id.), is no

more than a 'threadbare recital' of one of the elements of a contributory infringement claim").

The Complaint demonstrates that the accused service has substantial noninfringing uses.

The YouTube Live service does not require a user to use a cellular connection or be in motion as

required by the coupling step in claim 1 (and the coupling means in claim 9).  *See e.g.*,

Complaint ¶ 25 (p. 13) (screenshot showing that users can livestream in a variety of

circumstances, like a classroom or while playing a videogame, that have no motion or cellular

connection requirement).  Moreover, that same screenshot notes that to stream live on a mobile device a user must have 1,000 subscribers, which means many users of the YouTube App (with less than 1,000 subscribers) are using the App without live streaming, demonstrating substantial noninfringing use.  *Id.*

## V.    CONCLUSION

Google respectfully requests that Plaintiff's Complaint be dismissed with prejudice for the foregoing reasons.

Dated: December 12, 2019                   Respectfully submitted,

                                          */s/ Michael E. Jones*

*Of Counsel:*                              Michael E. Jones
Kevin X. McGann (NYSB No. 2842425)         SBN:  10929400
Email:  kmcgann@fenwick.com                Email:  mikejones@potterminton.com
Eric A. Krause (CSB No. 257925)            Patrick C. Clutter
Email:  ekrause@fenwick.com                SBN:  24036374
Scott D. Baker (NYSB No. 5690292)          Email:  patrickclutter@potterminton.com
Email:  sbaker@fenwick.com                 POTTER MINTON, PC
**FENWICK & WEST LLP**                     110 North College, Suite 500
902 Broadway, Suite 14                     Tyler, TX  75702
New York, NY  10010                        Tel:  (903) 597-8311
Tel:  (212) 430-2600                       Fax:  (903) 593-0846
Fax:  (650) 938-5200

Silicon Valley Center
801 California Street
Mountain View, CA  94041
Tel:  (650) 988-8500
Fax:  (650) 938-5200

                                          *Counsel for Defendant*
                                          GOOGLE LLC

**CERTIFICATE OF SERVICE**

Pursuant to the Federal Rules of Civil Procedure and Local Rule CV-5, I hereby certify that, on December 12, 2019, all counsel of record who have appeared in this case are being served with a copy of the foregoing via the Court's CM/ECF system.

<u>/s/ Michael E. Jones</u><br>
Michael E. Jones