UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
WACO DIVISION

GABRIEL DE LA VEGA,

        Plaintiff,

  v.

GOOGLE LLC,

        Defendant.

Case No. 6:19-cv-00617-ADA

**GOOGLE'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS UNDER FEDERAL RULE 12(B)(6) FOR FAILURE TO STATE A CLAIM FOR RELIEF**

**TABLE OF CONTENTS**

I.  The '986 Patent Is Unenforceable Because PLaintiff's Deliberately Chosen Course of Action Abandoned His Application for More than Eight Years ......................... 1

II. The Complaint Fails to Set Forth a Plausible Claim for Direct Infringement ..................... 4

    A.  The Complaint Lacks Allegations to Support an Inference that Google Directly Infringes Any Claim ..................................................................... 4

    B.  The Complaint Fails to Plausibly Support that a Single Actor Performs the Claimed Method of Claim 1 or Invokes the Claimed System of Claim 9 ............... 6

        1.  By Omission, the Response Concedes Method Claim 1 is Not Directly Infringed .................................................................................. 6

        2.  System Claim 9 is Not Directly Infringed ................................................... 7

III. The Complaint's Allegations of Indirect Infringement Fail to Set Forth a Plausible Claim and Should be Dismissed ............................................................................... 8

    A.  The Response Concedes That the Complaint Omits the Required Specific Intent to Induce Infringement ................................................................ 8

    B.  The Complaint Establishes Substantial Non-Infringing Uses that Preclude Contributory Infringement ......................................................................... 9

IV. Conclusion ........................................................................................................................ 10

# **TABLE OF AUTHORITIES**

Page(s)

**Cases**

*Affinity Labs of Tex., LLC v. Toyota Motor North America, Inc.*,
   W:13-CV-365, 2014 WL 2892285 (W.D. Tex. May 12, 2014) ............................................8, 9

*Aristocrat Techs. Austl. PTY Ltd. v. Int'l Game Tech.*,
   543 F.3d 657 (Fed. Cir. 2008)...................................................................................1, 2, 3

*In re Bill of Lading*,
   681 F.3d 1323 (Fed. Cir. 2012).................................................................................8, 9, 10

*De La Vega v. IBM Corp.*,
   Case No. 6:19-cv-614 (ADA), Dkt. 22 ................................................................................1

*Exela Pharma Sciences, LLC v. Lee*,
   781 F.3d 1349 (Fed. Cir. 2015).............................................................................................3

*Ferguson Beauregard/Logic Controls v. Mega Sys., LLC*,
   350 F.3d 1327 (Fed. Cir. 2003).............................................................................................1

*Field Hybrids, LLC v. Toyota Motor Corp.*,
   No. Civ. 03-4121, 2005 WL 189710 (D. Minn. Jan. 27, 2005)............................................2

*Grecia v. McDonald's Corp.*,
   724 Fed. Appx. 942 (Fed. Cir. 2018)....................................................................................7

*Innogenetics, N.V. v. Abbott Labs.*,
   512 F.3d 1363 (Fed. Cir. 2008).............................................................................................1

*Intellectual Ventures I LLC v. Motorola Mobility LLC*,
   870 F.3d 1320 (Fed. Cir. 2017).............................................................................................7

*Iqbal/Twombly. Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007)..............................................................................................................5

*Lawman Armor Corp. v. Simon*,
   No. 04-CV-72260, 2005 WL 1176973 (E.D. Mich. Mar. 29, 2005) ....................................2

*Lyda v. CBS Corp.*,
   838 F.3d 1331 (Fed. Cir. 2017).............................................................................................5

*New York University v. Autodesk, Inc.*,
   495 F. Supp.2d 369 (S.D.N.Y. 2007)....................................................................................2

## TABLE OF AUTHORITIES

**Page(s):**

*Patent Harbor, LLC v. DreamWorks Animation SKG, Inc.*,
    No. 6:11-cv-229, 2012 WL 9864381 (E.D. Tex. July 27, 2012) ............................................8, 9

*Rosebud LMS Inc. v. Adobe Systems Inc.*,
    812 F. 3d 1070 ............................................................................................................................6

**I.      THE '986 PATENT IS UNENFORCEABLE BECAUSE PLAINTIFF'S DELIBERATELY CHOSEN COURSE OF ACTION ABANDONED HIS APPLICATION FOR MORE THAN EIGHT YEARS**

Plaintiff's response does not dispute that through a deliberately chosen course of action, he abandoned his patent application for more than eight years. *See* Dkt. 15 at 2, 5. Plaintiff's response confirms that there are no factual disputes that would preclude granting Google's motion. Dkt. 17 at 4-7. With a wave of the hand, Plaintiff wrongly dismisses the most factually similar cases as not "precedence [sic]." Dkt. 17 at 4. Plaintiff then incorrectly attempts to rely on a case, *Aristocrat Techs. Austl. PTY Ltd. v. Int'l Game Tech.*, 543 F.3d 657 (Fed. Cir. 2008),[1] that bears no resemblance to this case, and never addresses that the PTO's decision here was arbitrary, capricious and an abuse of discretion. In *Aristocrat Techs.*, the Federal Circuit never found that an accused infringer should have no recourse where the delay that caused an application to be abandoned was both based upon a deliberate course of action and was as extensive as in this case. Here, the Plaintiff cannot be permitted to enforce a patent based on the application he abandoned for more than eight years through a deliberate course of action.[2]

Plaintiff does not dispute that he and his attorney both were aware of the need to respond to the PTO and did not do so for more than eight years. Dkt. 15 at 2-3. Plaintiff also does not

---

[1] Plaintiff repeatedly miscites *Aristocrat* (Dkt. 17 at 5-6), but appears to be attempting to cite the same case addressed by Google, especially based upon what appears to be a lengthy quote from *Aristocrat*, 543 F.3d at 663-64 (albeit incorrectly cited and without indications that it is a quote). This lengthy quote includes citations to *Innogenetics, N.V. v. Abbott Labs.*, 512 F.3d 1363, 1378 (Fed. Cir. 2008) and *Ferguson Beauregard/Logic Controls v. Mega Sys., LLC*, 350 F.3d 1327, 1343–44 (Fed. Cir. 2003), neither of which is relevant here as they address inequitable conduct and under completely unrelated circumstances.

[2] The facts of this case, as well as evidence submitted in IBM's recent answer to allegations of infringement of the same patent, clearly indicate that Plaintiff's statements about inability to pay for more than eight years are false. *De La Vega v. IBM Corp.*, Case No. 6:19-cv-614-ADA, Dkt. 22 at 13-22. While there is strong basis to assert inequitable conduct here, Google leaves that issue for another day since it is not necessary to resolve the present motion.

dispute that the delay resulted from a deliberate course of action and that the Examiner confirmed this with Plaintiff's attorney before sending a notice of abandonment.  Dkt. 15 at 2, 5-6.  Thus, the undisputed eight-year delay here presents an even more compelling basis to hold the '986 patent unenforceable than in the cases cited in Google's brief.  *See* Dkt 15 at 5-6; *Field Hybrids, LLC v. Toyota Motor Corp.,* No. Civ. 03-4121, 2005 WL 189710, at *1-2, *7 (D. Minn. Jan. 27, 2005) (overturning revival as an abuse of discretion based on nine-month delay while unable or unwilling to pay legal fees); *Lawman Armor Corp. v. Simon*, No. 04-CV-72260, 2005 WL 1176973, at *3, *5-6 (E.D. Mich. Mar. 29, 2005) (granting summary judgment that patent was unenforceable because approximately 3.5 years delay was not unintentional); s*ee also New York University v. Autodesk, Inc.*, 495 F. Supp.2d 369, 371, 374-75 (S.D.N.Y. 2007) (refusing to dismiss counterclaim for unenforceability based upon 12.5 months delay).  Plaintiff makes no attempt to distinguish these cases.  While these cases are not precedent in this Court, they are highly persuasive and demonstrate that the '986 patent must be held unenforceable.

Plaintiff's deliberate decision to not respond to the PTO for eight years is not the kind of procedural "irregularity," "minutiae," or "minor" lapse the Federal Circuit addressed in *Aristocrat*, 543 F.3d at 663.  In *Aristocrat*, the PTO received the fee for a national stage application "**one day late.**"  *Aristocrat*, 543 F.3d at 659 (emphasis added).  Applicant's petition to revive the application as unintentionally abandoned was granted.  *Id.* at 660-61.  On those facts, the Federal Circuit concluded that "[u]nder the circumstances of this case, the APA provides no relief to IGT."  *Id.* at 664.  Nothing in *Aristocrat* suggested that the APA or some other avenue should not provide relief in a case like the present one where Plaintiff has admitted that his deliberately chosen course of action abandoned his application for eight years.

In a more recent case involving a third-party suit against the PTO challenging the PTO's

decision to grant a petition to revive under the "unintentional" prong, rather than "unavoidable" prong of 37 C.F.R. § 1.137, for a one-month late fee and filing, the Federal Circuit held that this decision was not reviewable via a collateral attack.[3] *Exela Pharma Sciences, LLC v. Lee*, 781 F.3d 1349, 1351 (Fed. Cir. 2015).   Judge Dyk's concurrence noted that "the Patent Act is structured to channel third party challenges to patent validity," and one of those channels is "as defenses to patent infringement." *Id.* at 1354.  Judge Dyk further explained the flaws in *Aristocrat* and called into question whether *Aristocrat* was correctly decided.  *Id.* at 1354-56. Whether based on unenforceability or via the APA, after the extraordinarily long delay that Plaintiff admits was based on a deliberately chosen course of action, the '986 patent is unenforceable.

Plaintiff's attempts to suggest that the deliberate course of action that lead to an eight-year delay is the kind of thing happens all the time and is regularly approved by the PTO is both unsupported and irrelevant.  First, Plaintiff very carefully notes that applications are sometimes abandoned and, in a separate sentence, that applications are sometimes revived, but cites not a single example, much less one that comes close to the facts here.  Dkt. 17 at 4.  Moreover, Plaintiff's suggestion that there should be additional cases on facts like those here is likewise unpersuasive.  The more likely explanation is that no one even attempted what Plaintiff has done here because it so clearly violates the PTO's guidance on what constitutes unintentional delay.

Finally, Plaintiff's attempt to distinguish between attorney's fees and prosecution fees

---

[3] Google first identified the *Exela* case in preparing this reply.  Although the *per curiam* opinion in *Exela* spoke in broad terms, the issues there were far different from the facts here.  First, the challenge in *Exela* was to the underlying PTO rule itself, rather than its application.  *Exela Pharma*, 781 F.3d at 1351.  Moreover, any delay in *Exela* was much shorter, the patentee never admitted that the delay was the result of a deliberately chosen course of action, and the challenge was based on whether the PTO could apply the "unintentional delay" rule at all.

falls flat. Dkt. 17 at 6. The PTO made no such distinction in its explanation of what is a deliberate course of action and thus not unintentional. S*ee also* Dkt. 15 at 6; Dkt. 15-2 at 700-231 (MPEP § 711.03(c) discussing and quoting 37 CFR § 1.137(b)). Moreover, that the very statement from 37 CFR § 1.137(b) that Plaintiff quotes separately refers to "patent fees" and "prosecution expenses," undermines Plaintiff's argument that a decision not to pay one's attorney is a basis to assert a delay was unintentional. Dkt 17 at 6. Moreover, Plaintiff's statements confirm that Plaintiff's chosen course of action that caused the delay was deliberate, not unintentional.

The undisputed facts of this case, which are based on the administrative record properly considered by this Court on a motion to dismiss, demonstrate that Plaintiff took a deliberate course of action that caused his application to be abandoned for more than eight years. Based on the undisputed administrative record and Plaintiff's own admissions, the '986 patent is unenforceable.

## II.   THE COMPLAINT FAILS TO SET FORTH A PLAUSIBLE CLAIM FOR DIRECT INFRINGEMENT

### A. The Complaint Lacks Allegations to Support an Inference That Google Directly Infringes Any Claim

Plaintiff's extensive quotations from its deficient Complaint only highlight that it has failed to allege any facts that would support the inference that Google directly infringes any claim of the '986 patent. There is no evidence to plausibly support a claim that anyone has performed the "coupling" step or means, and the only assertions that Google has directly infringed rely on alleged testing performed years before the patent issued that cannot possibly support a claim for infringement.

Plaintiff admits that the "'coupling" limitation requires coupling content from a camera to a network using cellular telephony (which the response asserts is a cellular data plan) and that the

content be acquired while in motion within the cellular telephony coverage area.[4]  Dkt. 17 at 7.  As Google explained, the Complaint is devoid of allegations that would support an inference that it (or anyone) performs the coupling steps.  Dkt 15 at 7-9.  In response, Plaintiff simply quotes from its deficient Complaint, but the Complaint does not allege any facts regarding a data plan.  The only quoted allegation mentioning "coupling" (and "motion" and "cellular") simply restates the claim language rather than alleging facts to support that the claimed coupling is performed, who performs it, or how.  *Id.* at pp. 7-8, citing Compl. ¶ 21 (asserting legal conclusions of direct and indirect infringement without identifying any facts relating to coupling using cellular telephony or acquiring content while in motion).  Such legal conclusions couched as factual allegations are insufficient to defeat a motion to dismiss under *Iqbal/Twombly*.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Lyda v. CBS Corp.*, 838 F.3d 1331, 1337 (Fed. Cir. 2017).

Plaintiff then repeats allegations from pages 6 and 12 of his Complaint, including a screenshot from a venturebeat.com article (which the response later mischaracterizes as an advertisement).  *See* Dkt. 17 at 8-9, 10 (referring to Compl. ¶ 25 (at pp. 6, 7 and 12)).  Plaintiff relies on this article to support his allegation that someone performed the "coupling" step or means when Google "tested" what the Complaint refers to as the Accused Instrumentality.  Dkt. 17 at 10-11.  This article cannot support Plaintiff's direct infringement claims for several reasons.  First, the referenced article is dated June 23, 2016 (*see, e.g.*, Compl. ¶ 25 (at pp. 7 and 12)) and the patent here issued in 2019.  '986 patent at Cover.  Nothing that Google or anyone else did in 2016 can infringe the '986 patent that issued in 2019.  *See* 35 U.S.C. § 271(a)

---

[4]  The Opposition alleges that the "coupling" limitation refers to a cellular data plan, but the Complaint does not explain this or offer any evidence regarding such a data plan.  There is no explanation of who provides the cellular data plan under Plaintiff's theory, and no allegation that such a plan is required to operate the accused functionality of the YouTube app or YouTube Live, or that any party performed the claimed method while using such a cellular data plan.

5

(infringement liability for actions that occur "during the term of the patent"); *Rosebud LMS Inc. v. Adobe Systems Inc.*, 812 F. 3d 1070, 1073-74 (Fed. Cir. 2016) (generally no infringement before a patent issues).[5] Moreover, these allegations fail to describe any coupling to a cellular network (or using a cellular data plan) or acquiring content while in motion.

The Complaint fails to state a claim for direct infringement of the '986 patent because it lacks any factual allegations to support that the coupling step or means is met and should therefore be dismissed.

### B. The Complaint Fails to Plausibly Support That a Single Actor Performs the Claimed Method of Claim 1 or Invokes the Claimed System of Claim 9

#### 1. By Omission, the Response Concedes That Method Claim 1 is Not Directly Infringed

Google's motion established that no one actor performs all steps of method claim 1. The response alleges that Google's testing infringed the claim, but the Complaint identifies no evidence that Google tested the accused functionality, much less all the steps of claim 1. The only reference to testing is a 2016 article, which cannot support infringement of the '986 patent claims that did not issue until 2019. Any claims for indirect infringement based on users performing the steps of claim 1, should be dismissed because Plaintiff has only attempted to plead direct infringement by Google's testing (albeit based on events predating the patent's issuance that also fail to support an infringement claim).

Claim 1 is drafted to be performed by multiple actors, including at least two separate users: (1) a content provider user, and (2) a viewing user. Under the applicable precedent, Plaintiff's Complaint must allege facts to plausibly support an inference that any steps allegedly

---

[5] Plaintiff has not sought pre-issuance damages under 35 U.S.C. § 154(d), nor could he because he admits he has not alleged actual notice (Dkt. 17 at 11-12) and, as shown in Google's opening brief, the claims were substantially amended, which would preclude any finding of identity of invention with respect to the published application and the issued patent.

performed by third parties are performed under the direction or control of, or are the result of a joint enterprise with, the accused infringer. *See* Dkt. 15 at 9-13. Plaintiff's response never addresses this shortcoming in its Complaint, effectively conceding that he is unable to plead sufficient facts to support an inference that claim 1 is infringed by the joint actions of multiple actors. Plaintiff's claims for direct infringement of claim 1 should be dismissed.

### 2. System Claim 9 is Not Directly Infringed

Plaintiff's response asserts that Google's customers put the system of claim 9 into use, and that they control and gain benefit from that system. *See* Dkt. 17 at 11. Even if true, that is not enough to show an infringing use. "[T]o use a system, a person must control (even if indirectly) and benefit from each claimed component." *Intellectual Ventures I LLC v. Motorola Mobility LLC*, 870 F.3d 1320, 1329 (Fed. Cir. 2017) (rejecting that user only need benefit from one claimed aspect or from "the system as a whole"); *see also Grecia v. McDonald's Corp.*, 724 Fed. Appx. 942, 946 (Fed. Cir. 2018) (applying *Intellectual Ventures* to affirm 12(b)(6) dismissal). The Complaint fails to state a plausible claim for direct infringement of claim 9 because it provides no allegations to support an inference that Google's customers (or anyone else) control such a system and obtain a benefit from *each* limitation of the claim.

Claim 9 is drafted such that the recited means would be used by multiple actors, including a content provider user and a viewing user. But, there are no allegations to support the inference that a single user can use system claim 9, which requires a content provider user to upload content acquired while in motion and a viewing user to use a filter to select that content. *See* Dkt. 15 at 13-14. Indeed, Plaintiff's response did not describe how a single user used (or even could use) the entire system. Moreover, as discussed in Google's motion and above, there is no evidence that anyone practices the "coupling" means.

Plaintiff's claims for direct infringement of claim 9 should be dismissed.

### III. THE COMPLAINT'S ALLEGATIONS OF INDIRECT INFRINGEMENT FAIL TO SET FORTH A PLAUSIBLE CLAIM AND SHOULD BE DISMISSED

There can be no indirect infringement absent direct infringement. As explained above, the Complaint fails to set forth sufficient factual allegations to support a finding of direct infringement and, on that basis alone, any claim for indirect infringement must be dismissed. *See* Dkt. 15 at 15-16. Moreover, Plaintiff's admissions in his Complaint and responsive brief show that he has no plausible claim for indirect infringement.

#### A. The Response Concedes That the Complaint Omits the Required Specific Intent to Induce Infringement

Plaintiff concedes that his Complaint does not allege facts sufficient to support a claim for pre-suit inducement. Dkt 17 at 11-12. Plaintiff also confirms that "the Complaint does not explicitly plead facts to show that Defendant had a specific intent to induce infringement." Dkt. 17 at 12. This alone supports dismissal of Plaintiff's claim for induced infringement, whether before or after the Complaint was filed, because "[t]o survive [a] motion to dismiss . . . complaints must contain facts plausibly showing that the [accused indirect infringer] specifically intended their customers to infringe." *In re Bill of Lading*, 681 F.3d 1323, 1339 (Fed. Cir. 2012); *see also Affinity Labs of Tex., LLC v. Toyota Motor North America, Inc.*, No. W:13-CV-365, 2014 WL 2892285, at *3, *7 (W.D. Tex. May 12, 2014) (citing and applying *Bill of Lading* to dismiss claims for induced infringement).

Other than conceding that it has no allegations to support pre-suit inducement, Plaintiff largely ignores Google's explanation of why its Complaint fails to support a reasonable inference of induced infringement. *See* Dkt. 15 at 16-18. Moreover, Plaintiff's reliance on the Report and Recommendation in *Patent Harbor* fails. First, the recommendation Plaintiff relies upon was never adopted. Second, the court in that case specifically relied on allegations in the complaint that the party accused of inducing infringement performed the method or directed and controlled

8

others to do so "through contract." *See Patent Harbor, LLC v. DreamWorks Animation SKG, Inc.*, No. 6:11-cv-229, 2012 WL 9864381, at *5 (E.D. Tex. July 27, 2012). No such contract is alleged here. *Patent Harbor* is thus neither precedent nor is it persuasive here because, as Google's opening brief explained, the Complaint makes no allegations of direction, control, or otherwise in support of joint infringement. *See* Dkt. 15 at 9, 12-13. The Complaint's formulaic recital of legal conclusions (*see e.g.,* Dkt. 1 at ¶ 26, p. 17) is insufficient to meet the pleading standards required for a claim of induced infringement. *See Affinity Labs*, 2014 WL 2892285, at *7 (dismissing complaint for failure "to allege how [the accused indirect infringer] induced its customers to use the [accused product] in a manner that would violate the Asserted Patents").

Plaintiff's inducement claims should be dismissed because Plaintiff admits his Complaint fails to meet the standard set by *In re Bill of Lading* and applied in *Affinity*. There simply are no allegations that would support a plausible inference that Google induced anyone to perform all the steps of claim 1 (or use the means of claim 9, which are never addressed in the Complaint).

### B. The Complaint Establishes Substantial Non-Infringing Uses That Preclude Contributory Infringement

A complaint must plead facts sufficient to plausibly infer that a component has no substantial non-infringing uses to support a claim of contributory infringement. *In re Bill of Lading*, 681 F.3d at 1337. Plaintiff's cited case applies this requirement when recommending dismissal of contributory infringement claims where "the Complaint fails to identify the components used in the infringing method and is devoid of any allegation from which the Court can plausibly infer that any components being sold have no substantial non-infringing uses." *Patent Harbor*, 2012 WL 9864381, at *5.

In contrast, statements in Plaintiff's Complaint establish clear non-infringing uses. For example, the Complaint alleges that the YouTube application on a mobile device allows users to

"Watch, Listen, Stream," none of which requires coupling live content, whether via cellular telephony or not, but can involve consuming others' content. Compl. ¶ 25 (p. 7). Plaintiff then argues that these non-accused features should be ignored for purposes of contributory infringement. Plaintiff is wrong — he cannot rely on Google providing the YouTube app and YouTube Live service as the basis for contributory infringement, but then ignore the features of the accused instrumentality that do not allegedly contribute to infringement. *See In re Bill of Lading*, 681 F.3d at 1338 (rejecting patentee's argument to confine the substantial non-infringing use analysis to the claimed method: "These allegations are tailored too narrowly; they say nothing more than 'if you use this device to perform the patented method, the device will infringe and has no non-infringing uses.' But that is not the relevant inquiry. For purposes of contributory infringement, the inquiry focuses on whether the accused products can be used for purposes *other than* infringement.") (emphasis in original).

Plaintiff identifies the components as "the YouTube Application on a mobile device, and the www.youtube.com/live server." Dkt. 17 at 13. The Complaint shows that the YouTube Live server can stream live content from sources not in motion, like from a classroom or videogame. Compl. ¶ 25 (p. 13). Even if such live content is uploaded using the YouTube Application, users can use WiFi, which would not involve cellular telephony as required by the claims.

The Complaint's identification of substantial non-infringing uses for the accused YouTube app and YouTube Live service forecloses contributory infringement, and the Complaints claims for such should be dismissed.

IV.   CONCLUSION

Google respectfully requests that Plaintiff's Complaint be dismissed with prejudice.

| | |
|---|---|
| December 30, 2019 | Respectfully, submitted, |
| | |
| | */s/ Kevin X. McGann with permission*<br>*by Michael E. Jones*<br>Michael E. Jones<br>SBN:  10929400<br>Email:  mikejones@potterminton.com |
| *Of Counsel:* | Patrick C. Clutter<br>SBN:  24036374 |
| Kevin X. McGann (NYSB No. 2842425)<br>Email:  kmcgann@fenwick.com<br>Eric A. Krause (CSB No. 257925)<br>Email:  ekrause@fenwick.com<br>Scott D. Baker (NYSB No. 5690292)<br>Email:  sbaker@fenwick.com<br>**FENWICK & WEST LLP**<br>902 Broadway, Suite 14<br>New York, NY  10010<br>Tel:  (212) 430-2600<br>Fax:  (650) 938-5200 | Email:  patrickclutter@potterminton.com<br>**POTTER MINTON, PC**<br>110 North College, Suite 500<br>Tyler, TX  75702<br>Tel:  (903) 597-8311<br>Fax:  (903) 593-0846 |
| Silicon Valley Center<br>801 California Street<br>Mountain View, CA  94041<br>Tel:  (650) 988-8500<br>Fax:  (650) 938-5200 | |
| | *Counsel for Defendant*<br>GOOGLE LLC |

11

## CERTIFICATE OF SERVICE

Pursuant to the Federal Rules of Civil Procedure and Local Rule CV-5, I hereby certify that, on December 30, 2019, all counsel of record who have appeared in this case are being served with a copy of the foregoing via the Court's CM/ECF system.

*/s/ Michael E. Jones*
Michael E. Jones
