```
 1                  UNITED STATES DISTRICT COURT
                    WESTERN DISTRICT OF TEXAS
 2                        WACO DIVISION

 3  GABRIEL DE LA VEGA      ) Docket No. WA 19-CA-612 ADA
                            )
 4  vs.                     ) Waco, Texas
                            )
 5  MICROSOFT CORPORATION   ) January 31, 2020
    ------------------------------------------------------------
 6                  UNITED STATES DISTRICT COURT
                    WESTERN DISTRICT OF TEXAS
 7                        WACO DIVISION

 8  GABRIEL DE LA VEGA      ) Docket No. WA 19-CA-617 ADA
                            )
 9  vs.                     ) Waco, Texas
                            )
10  GOOGLE, LLC             ) January 31, 2020

11

12                  TRANSCRIPT OF MOTION HEARING
              BEFORE THE HONORABLE ALAN D. ALBRIGHT

13

14  APPEARANCES:

15  For the Plaintiff:        Mr. Austin Hansley
                              Mr. Paul W. O'Finan
16                            Hansley Law Firm, PLLC
                              2931 Ridge Road, Suite 101
17                            #530
                              Rockwall, Texas 75032
18

19  For Microsoft Corp:       Mr. Barry K. Shelton
                              Shelton & Coburn, LLP
20                            311 RR 620 South, Suite 205
                              Austin, Texas 78734
21

22  For Google, LLC:          Mr. Scott D. Baker
                              Mr. Kevin X. McGann
23                            Fenwick & West, LLP
                              902 Broadway, Suite 14
24                            New York, New York 10010

25
```

1    **(Appearances Continued:)**

2    For Google, LLC:          Mr. Michael E. Jones
                               Potter Minton, PC
3                              110 North College Street,
                               Suite 500
4                              Tyler, Texas 75702

5    Court Reporter:           Ms. Lily Iva Reznik, CRR, RMR
                               501 West 5th Street, Suite 4153
6                              Austin, Texas 78701
                               (512)391-8792

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25   Proceedings reported by computerized stenography,
     transcript produced by computer.

| | | |
|---|---|---|
| 10:14:20 | 1 | THE COURT:  The next case I have in front of me |
| 10:14:23 | 2 | is De La Vega vs. Microsoft and vs. Google.  And -- yes, |
| 10:14:23 | 3 | sir. |
| 10:14:27 | 4 | MR. DEVOOGD:  Andrew Devoogd, your Honor.  I |
| 10:14:29 | 5 | apologize for interrupting. |
| 10:14:30 | 6 | THE COURT:  No. |
| 10:14:31 | 7 | MR. DEVOOGD:  Counsel for defendants in the Parus |
| 10:14:33 | 8 | matters reminded me that I neglected to tell you that we |
| 10:14:37 | 9 | are no longer proceeding with our injunctive relief |
| 10:14:39 | 10 | claims.  That was also the subject of some of the |
| 10:14:42 | 11 | briefing.  So we will be withdrawing those allegations. |
| 10:14:45 | 12 | THE COURT:  Okay.  Very good. |
| 10:14:47 | 13 | MR. DEVOOGD:  Thank you, your Honor. |
| 10:14:48 | 14 | THE COURT:  You're doing that voluntarily.  I'm |
| 10:14:50 | 15 | not. |
| 10:14:51 | 16 | MR. DEVOOGD:  That is correct.  Streamlining the |
| 10:14:54 | 17 | case. |
| 10:14:54 | 18 | THE COURT:  Very good. |
| 10:14:55 | 19 | MR. DEVOOGD:  Thank you. |
| 10:14:56 | 20 | THE COURT:  Who is here for De La Vega? |
| 10:14:59 | 21 | MR. O'FINAN:  I'm Paul O'Finan for De La Vega. |
| 10:15:06 | 22 | And Mr. Austin Hansley is here with me.  And Mr. Gabriel |
| 10:15:10 | 23 | De La Vega is in the gallery, your Honor.  He's here. |
| 10:15:15 | 24 | THE COURT:  Very good. |
| 10:15:15 | 25 | MR. HANSLEY:  And, your Honor, I currently have |

| | | |
|---|---|---|
| 10:15:17 | 1 | an application pending for admission. |
| 10:15:18 | 2 | THE COURT:  No.  We denied it. |
| 10:15:20 | 3 | MR. HANSLEY:  Well, no.  I have a full |
| 10:15:22 | 4 | application, not just a pro hac. |
| 10:15:23 | 5 | THE COURT:  You have a full application pending? |
| 10:15:25 | 6 | Okay.  We denied the pro hac for that reason is I didn't |
| 10:15:29 | 7 | realize you had a full application pending, and that's all |
| 10:15:32 | 8 | I was going to tell you to do here today was, I wanted you |
| 10:15:36 | 9 | to go through the full application process. |
| 10:15:39 | 10 | MR. O'FINAN:  He has done that, your Honor.  He |
| 10:15:40 | 11 | has done that. |
| 10:15:41 | 12 | THE COURT:  Have you been admitted? |
| 10:15:42 | 13 | MR. O'FINAN:  We're waiting. |
| 10:15:43 | 14 | THE COURT:  Oh, I understand. |
| 10:15:45 | 15 | MR. HANSLEY:  I've submitted the application. |
| 10:15:46 | 16 | I've taken the course.  I've sent two recommendation |
| 10:15:50 | 17 | letters with signatures in ink, and I've paid the fee, and |
| 10:15:56 | 18 | that was roughly a week ago, ten days ago. |
| 10:16:00 | 19 | THE COURT:  Okay.  As soon as you are -- as soon |
| 10:16:03 | 20 | as that -- they admit you, then you'll be obviously free |
| 10:16:07 | 21 | to appear here. |
| 10:16:08 | 22 | MR. HANSLEY:  Okay. |
| 10:16:08 | 23 | THE COURT:  I was unaware you had filed a formal |
| 10:16:12 | 24 | application.  I just knew you had done the pro hac and |
| 10:16:17 | 25 | you've filed a couple of cases here.  I wanted it not to |

| | | |
|---|---|---|
| 10:16:21 | 1 | be on a continual pro hac basis.  I wanted you to go |
| 10:16:24 | 2 | through the full -- I was just unaware you did that.  In |
| 10:16:26 | 3 | other words, you did exactly the right thing and I'm glad |
| 10:16:28 | 4 | you did it already. |
| 10:16:29 | 5 | MR. HANSLEY:  Your Honor, I actually filed the |
| 10:16:31 | 6 | application before I filed the pro hacs, but I thought |
| 10:16:35 | 7 | some circumstances arose where I thought that I was going |
| 10:16:38 | 8 | to need to -- it was necessary for me to be here today. |
| 10:16:41 | 9 | And so, I filed the pro hac motions because they hadn't |
| 10:16:45 | 10 | given notice of the full application. |
| 10:16:48 | 11 | THE COURT:  Well, then, you did exactly the right |
| 10:16:49 | 12 | thing. |
| 10:16:49 | 13 | MR. O'FINAN:  Your Honor, would you be willing to |
| 10:16:51 | 14 | reconsider the pro hac motion since he did follow the |
| 10:16:54 | 15 | admission requirements to file for admission?  He was not |
| 10:16:57 | 16 | going to continually just be pro hac all the time.  So |
| 10:17:00 | 17 | he's done that. |
| 10:17:01 | 18 | So would the Court be willing to reconsider |
| 10:17:03 | 19 | admitting him pro hac for the purpose of the De La Vega |
| 10:17:06 | 20 | case today? |
| 10:17:06 | 21 | THE COURT:  For the purpose of the De La Vega |
| 10:17:08 | 22 | case today, I will. |
| 10:17:10 | 23 | MR. O'FINAN:  Thank you, your Honor. |
| 10:17:14 | 24 | MR. SHELTON:  Your Honor, Barry Shelton of |
| 10:17:17 | 25 | Shelton Coburn, LLP for Microsoft. |

| | | |
|---|---|---|
| 10:17:18 | 1 | THE COURT:  You're getting a lot of cases. |
| 10:17:20 | 2 | That's wonderful, Mr. Shelton.  And then, behind you? |
| 10:17:23 | 3 | MR. JONES:  Your Honor, Mike Jones for Google. |
| 10:17:25 | 4 | And here, also representing Google, is Mr. Kevin McGann |
| 10:17:29 | 5 | and Mr. -- |
| 10:17:30 | 6 | MR. MCGANN:  Good morning, your Honor. |
| 10:17:32 | 7 | MR. JONES:  -- Scott Baker.  And also here from |
| 10:17:34 | 8 | Google itself is Mr. Howard Chin.  And, your Honor, we |
| 10:17:37 | 9 | also have an issue with regard to my co-counsel, Mr. |
| 10:17:40 | 10 | McGann and Mr. Baker in that they have applied for |
| 10:17:43 | 11 | admission.  They have been accepted, they received the |
| 10:17:46 | 12 | e-mail that says they need to be sworn in.  So we would -- |
| 10:17:49 | 13 | THE COURT:  I'm happy to do that while they're |
| 10:17:51 | 14 | here today. |
| 10:17:52 | 15 | MR. JONES:  Thank you, sir. |
| 10:17:54 | 16 | THE COURT:  The last time I think I saw you, Mr. |
| 10:17:55 | 17 | Jones, you were beating up on me in a case in Tyler and |
| 10:17:58 | 18 | doing a great job of it, so I think it's been long enough, |
| 10:18:00 | 19 | I can forget that now.  But you did a great job for your |
| 10:18:04 | 20 | client in that case. |
| 10:18:06 | 21 | MR. JONES:  I remember it very differently, your |
| 10:18:10 | 22 | Honor, as to who got the beating. |
| 10:18:11 | 23 | THE COURT:  Judge Davis gave a great trial for |
| 10:18:14 | 24 | sure. |
| 10:18:15 | 25 | MR. JONES:  Yes, sir. |

| 10:18:16 | 1 | THE COURT:  You all may be seated, but don't get |
| 10:18:18 | 2 | away without me swearing you in. |
| 10:18:20 | 3 | So you all -- by "you all," the attorneys who are |
| 10:18:27 | 4 | on this case sat through, I believe, the other hearing. |
| 10:18:31 | 5 | Let me start with Microsoft's counsel, Mr. Shelton. |
| 10:18:40 | 6 | Do you have any issues with the methodology that |
| 10:18:42 | 7 | I suggested in the other cases? |
| 10:18:45 | 8 | MR. SHELTON:  No, your Honor. |
| 10:18:45 | 9 | But the issues in the De La Vega cases, I submit, |
| 10:18:49 | 10 | are quite different, at least for Microsoft.  And so, I |
| 10:18:53 | 11 | don't believe that your Honor's guidance helps. |
| 10:18:57 | 12 | THE COURT:  Well, I'm aware that there is a -- |
| 10:18:59 | 13 | y'all's is a much more substantive motion to dismiss on |
| 10:19:02 | 14 | the merits, correct? |
| 10:19:03 | 15 | MR. SHELTON:  Yes, your Honor. |
| 10:19:04 | 16 | THE COURT:  Okay.  Did you want to take that up |
| 10:19:05 | 17 | this morning? |
| 10:19:06 | 18 | MR. SHELTON:  Your Honor, if I may propose that |
| 10:19:08 | 19 | Google go first. |
| 10:19:09 | 20 | THE COURT:  Okay. |
| 10:19:10 | 21 | MR. SHELTON:  Which is unusual for a trial lawyer |
| 10:19:12 | 22 | to suggest, but they have more issues than, quite frankly, |
| 10:19:16 | 23 | the Microsoft motion. |
| 10:19:16 | 24 | THE COURT:  Okay.  Very good. |
| 10:19:40 | 25 | MR. SHELTON:  Thank you, your Honor. |

| | | |
|---|---|---|
| 10:19:40 | 1 | MR. MCGANN:  Good morning, your Honor.  Kevin |
| 10:19:41 | 2 | McGann for Fenwick & West for Google today. |
| 10:19:45 | 3 | I don't know if you want to tend to the swearing |
| 10:19:47 | 4 | in with us.  But I appreciate it. |
| 10:19:49 | 5 | Your Honor, I did prepare a couple of items that |
| 10:19:54 | 6 | if there's -- simply because the record evidence may be |
| 10:19:57 | 7 | easier, more accessible, if your Honor would like it. |
| 10:20:00 | 8 | THE COURT:  Okay. |
| 10:20:01 | 9 | MR. MCGANN:  May I approach? |
| 10:20:03 | 10 | THE COURT:  And have you met Josh Yi, my clerk? |
| 10:20:05 | 11 | MR. MCGANN:  We did. |
| 10:20:06 | 12 | THE COURT:  Very good. |
| 10:20:14 | 13 | MR. MCGANN:  So, your Honor, I'm mindful of the |
| 10:20:17 | 14 | issues you have already addressed, and I'll try not to |
| 10:20:21 | 15 | repeat any of those. |
| 10:20:22 | 16 | The thing I would call out to your Honor that I |
| 10:20:25 | 17 | think is different here in this case with De La Vega and |
| 10:20:28 | 18 | Google is, there's a direct attack on the direct |
| 10:20:31 | 19 | infringement claims, okay?  That puts us in a very |
| 10:20:34 | 20 | different situation.  The problem arises because of the |
| 10:20:42 | 21 | way the claims are structured.  And we put in on the first |
| 10:20:45 | 22 | page of what we've provided to your Honor the chart that |
| 10:20:47 | 23 | we had in our brief that shows claim 1 and the allegations |
| 10:20:52 | 24 | of the complaint.  And I think when you look at that, it |
| 10:20:57 | 25 | makes clear that there's multiple actors required, okay? |

10:21:00  1        You have a content providing the person who's
10:21:03  2  taking a video while in motion, and they have to couple to
10:21:07  3  the cellular network.  Then you have the network and the
10:21:11  4  provider, which, presumably, they're accusing with
10:21:14  5  YouTube.  And then, you have a viewing user, who, on the
10:21:17  6  back end of all this, has to do filtering and selecting.
10:21:20  7  So we have at least three different actors.  And that
10:21:23  8  makes us a very different case than a straightforward
10:21:28  9  direct infringement case, your Honor.
10:21:30  10       And I don't need to go into the detail, but what
10:21:35  11  we've done in figure 2, just as to give you the background
10:21:37  12  of the patent -- this is page 2, showing all the different
10:21:41  13  parties involved.  And you have -- the flaw here is -- and
10:21:48  14  we've pointed it out in our briefing is, in a joint
10:21:51  15  infringement case -- and this is Lyda tells us this, you
10:21:55  16  have to allege some sort of direction and control or some
10:22:00  17  joint enterprise in order to attribute the acts of one of
10:22:04  18  the actors to the other.  You can't have three people
10:22:08  19  acting separately, just mash together willy-nilly and have
10:22:13  20  a direct infringement claim.
10:22:14  21       And the complaint has no allegations with respect
10:22:21  22  to direction and control or anything that would support a
10:22:23  23  joint infringement claim.  Now, as we point out in our
10:22:30  24  briefing, actually, some of these steps, they don't say
10:22:32  25  anything at all about doing them.  The coupling stuff, for

| | | |
|---|---|---|
| 10:22:35 | 1 | example, and that's the one where the person who has the |
| 10:22:39 | 2 | phone has to be connected to the cellular network and |
| 10:22:42 | 3 | taking video while in motion.  They say nothing about |
| 10:22:48 | 4 | that, who's doing that or how it's being done. |
| 10:22:51 | 5 | THE COURT:  Or how there's any inducement of |
| 10:22:53 | 6 | that. |
| 10:22:54 | 7 | MR. MCGANN:  How there's any control even for |
| 10:22:56 | 8 | direct infringement.  How plausibly does YouTube make |
| 10:23:00 | 9 | somebody move?  How would YouTube control them to move in |
| 10:23:04 | 10 | the cellular network? |
| 10:23:05 | 11 | THE COURT:  Right. |
| 10:23:06 | 12 | MR. MCGANN:  So I think there's a basic flaw in |
| 10:23:10 | 13 | the claim that they've put forth for direct infringement. |
| 10:23:14 | 14 | There's also, your Honor -- and I'm happy if you have any |
| 10:23:17 | 15 | questions on that. |
| 10:23:18 | 16 | THE COURT:  No.  We've been through -- my clerk |
| 10:23:20 | 17 | and I have been through both of that for both you and |
| 10:23:23 | 18 | Microsoft.  He's given me a pretty good idea of what the |
| 10:23:27 | 19 | case is about. |
| 10:23:27 | 20 | MR. MCGANN:  Okay.  I will try to move along |
| 10:23:30 | 21 | then, your Honor. |
| 10:23:30 | 22 | We also have a similar problem with claim 9, |
| 10:23:34 | 23 | although the complaint is very -- essentially doesn't say |
| 10:23:37 | 24 | anything other than there is a claim 9.  It doesn't say |
| 10:23:39 | 25 | anything about who's infringing it or how.  But that's a |

| | | |
|---|---|---|
| 10:23:44 | 1 | system claim.  And if you look at page 6 of what we've |
| 10:23:47 | 2 | provided your Honor, the law there requires that for use |
| 10:23:52 | 3 | of a system claim, the alleged direct infringer must |
| 10:24:00 | 4 | control, directly or indirectly, all the elements and must |
| 10:24:03 | 5 | benefit from all the elements. |
| 10:24:05 | 6 | There's no allegations in the complaint that |
| 10:24:09 | 7 | relate to that at all.  They don't address claim -- they |
| 10:24:13 | 8 | really don't address claim 9, but they certainly don't |
| 10:24:15 | 9 | address the controller benefit.  And then, the response to |
| 10:24:19 | 10 | our motion, the plaintiff simply says, well, defendants |
| 10:24:23 | 11 | put the system in claim 9 into use and are controlling and |
| 10:24:27 | 12 | gaining a benefit. |
| 10:24:29 | 13 | First of all, it's not in their complaint and, |
| 10:24:31 | 14 | second of all, that's insufficient as it's the Grecia case |
| 10:24:37 | 15 | applying Intellectual Ventures that dismissed claims on |
| 10:24:40 | 16 | that basis because generalized allegations of control or |
| 10:24:44 | 17 | benefit from the system as a whole are insufficient. |
| 10:24:49 | 18 | Okay.  And that's cited in our papers.  It's also listed |
| 10:24:52 | 19 | there on slide 6. |
| 10:24:54 | 20 | So, your Honor, in short, I don't think there is |
| 10:24:57 | 21 | any claim made out, any plausible claim for direct |
| 10:25:01 | 22 | infringement in the first place.  Obviously without the |
| 10:25:05 | 23 | direct infringement claims, the indirect fail. |
| 10:25:08 | 24 | THE COURT:  Right. |
| 10:25:09 | 25 | MR. MCGANN:  Now, your Honor, we've also |

| | | |
|---|---|---|
| 10:25:11 | 1 | addressed the other shortcomings related to intent, and |
| 10:25:14 | 2 | things like that, but I think your Honor's already taken |
| 10:25:17 | 3 | those up today, and I don't need to belabor those points. |
| 10:25:22 | 4 | Obviously there's no pre-suit notice.  There's no |
| 10:25:25 | 5 | willfulness in our case, okay? |
| 10:25:28 | 6 | The allegations of intent are nothing more than |
| 10:25:31 | 7 | they had intent.  There's no facts to suggest there's any |
| 10:25:36 | 8 | -- and when you look at the claim here, the actual patent |
| 10:25:39 | 9 | claim, you know, the intent to have somebody take video |
| 10:25:42 | 10 | while in motion.  I mean, this is not -- this is a stretch |
| 10:25:46 | 11 | on plausibility to begin with. |
| 10:25:48 | 12 | THE COURT:  Why don't you take up the issue you |
| 10:25:51 | 13 | have a notice of abandonment on page 9. |
| 10:25:55 | 14 | MR. MCGANN:  Yes. |
| 10:25:56 | 15 | So, your Honor, there's also cases that -- |
| 10:25:57 | 16 | somewhat interesting and unique because the applicant |
| 10:26:00 | 17 | abandoned the application for eight-and-a-half years.  And |
| 10:26:03 | 18 | if you look the notice of abandonment you referred to on |
| 10:26:07 | 19 | page 9, the attorney of record during the application |
| 10:26:11 | 20 | process was notified by the examiner and confirmed that |
| 10:26:14 | 21 | nothing was submitted. |
| 10:26:16 | 22 | Okay.  So it's not a case of somebody forgot a |
| 10:26:22 | 23 | deadline, somebody missed something.  The attorney who was |
| 10:26:23 | 24 | prosecuting the application confirmed nothing was |
| 10:26:26 | 25 | submitted.  Eight-and-a-half years later, presumably |

| | | |
|---|---|---|
| 10:26:31 | 1 | because of second thoughts, or some other reason, the |
| 10:26:34 | 2 | applicant tried to revive the application.  And we put in |
| 10:26:39 | 3 | the statement of the reasons for unintentional delay; |
| 10:26:42 | 4 | that's page 10 in what we provided your Honor. |
| 10:26:44 | 5 | The explanation was an inability to pay |
| 10:26:49 | 6 | attorneys' fees.  Okay.  While we can all decide whether |
| 10:26:56 | 7 | that's -- for eight-and-a-half years, whether that's |
| 10:26:58 | 8 | correct or he could have prosecuted the application on his |
| 10:27:00 | 9 | own, it doesn't change the fact that the standard for |
| 10:27:05 | 10 | unintentional delay that the patent office is supposed to |
| 10:27:07 | 11 | apply eliminates deliberate choices. |
| 10:27:12 | 12 | THE COURT:  Let me ask you two things.  First is, |
| 10:27:16 | 13 | is this an issue -- I will admit to you, I've not dealt |
| 10:27:19 | 14 | with this before sitting here.  Is this an issue that |
| 10:27:24 | 15 | should be taken up at a motion to dismiss stage or it may |
| 10:27:30 | 16 | be a 12(c)?  Or would it be better under a rule -- a |
| 10:27:34 | 17 | summary judgment motion? |
| 10:27:35 | 18 | And let me tell you why I'm asking that is -- in |
| 10:27:40 | 19 | part, is if the statement here's why we have the |
| 10:27:47 | 20 | unintentional delay is whatever it is, he says here, you |
| 10:27:51 | 21 | know, I couldn't afford to pay attorneys' fees, or |
| 10:27:53 | 22 | whatever it is.  Is that a fact issue that I have to |
| 10:27:56 | 23 | resolve?  I mean, I get -- you don't have to spend a lot |
| 10:27:59 | 24 | of time on saying eight-and-a-half years is a long time. |
| 10:28:02 | 25 | I get that. |

| | | |
|---|---|---|
| 10:28:04 | 1 | And my questions are, when -- what is the stage |
| 10:28:08 | 2 | at which you think is appropriate for a court to deal with |
| 10:28:12 | 3 | that?  And how should the Court take into consideration |
| 10:28:16 | 4 | whatever excuse -- I'm not being pejorative, but whatever |
| 10:28:21 | 5 | reason the inventor gives for the delay? |
| 10:28:26 | 6 | MR. MCGANN:  Well, your Honor, I'd submit that |
| 10:28:28 | 7 | you can take it up in the context of a 12(b)(6), like we |
| 10:28:31 | 8 | have raised it.  I certainly think you could take it up in |
| 10:28:34 | 9 | a judgment on pleadings or on a summary judgment.  But the |
| 10:28:38 | 10 | case we cited in our briefing is Camp vs. Pitts, where the |
| 10:28:42 | 11 | courts instructed that when considering whether the |
| 10:28:45 | 12 | actions of an administrative agency are correct, the Court |
| 10:28:49 | 13 | doesn't need to do its own factfinding.  The Court should |
| 10:28:54 | 14 | take the administrative record and use that record. |
| 10:28:58 | 15 | THE COURT well, here's my concern there, as well. |
| 10:29:02 | 16 | It sounds to me a little bit like what you're saying is |
| 10:29:06 | 17 | that eight-and-a-half years is almost as a matter of I |
| 10:29:11 | 18 | oughta decide as a matter of law, that's too long.  And |
| 10:29:17 | 19 | because he has articulated an excuse.  I'm not saying that |
| 10:29:23 | 20 | excuse has great merit or doesn't have great merit.  But |
| 10:29:25 | 21 | in a situation where -- and, again, I don't know -- I know |
| 10:29:31 | 22 | a little bit about patent law but not, you know, all this |
| 10:29:34 | 23 | stuff. |
| 10:29:37 | 24 | I think everyone on this side of the table at |
| 10:29:39 | 25 | least knows how little I know about patent law because |

10:29:43 1 they've all had to work with me.  But is it a bright-line

10:29:48 2 rule that you're advocating?  And I'm not saying I

10:29:49 3 wouldn't do that.  I think eight-and-a-half years is a --

10:29:55 4 may be a bright line I would be willing to say is correct.

10:29:59 5 But I'm not sure that that's the right way to do it.

10:30:03 6          MR. MCGANN:  So, your Honor, I think that your

10:30:06 7 inclination that eight-and-a-half years sort of -- at some

10:30:11 8 point, we've crossed over from the realm of somebody who

10:30:14 9 missed a deadline to somebody -- it's not -- there was a

10:30:18 10 deliberate choice.  But we're not asking you to do that,

10:30:21 11 your Honor, because I think the cases and there's three

10:30:25 12 district court cases that we cited to your Honor -- point

10:30:28 13 out that what you have is the -- if you look at -- this is

10:30:31 14 page 11 in what we've submitted to your Honor today.

10:30:34 15 We've pulled out the excerpt from -- this is the patent

10:30:38 16 office's regulations.  It's 1.137, I believe, your Honor.

10:30:43 17 And it describes what the patent office is supposed to

10:30:46 18 apply to determine whether an abandonment was

10:30:49 19 unintentional.

10:30:51 20          What these rule -- what the patent office's own

10:30:54 21 guidance tells you is, it's not -- when you take a

10:30:58 22 deliberate course of action, the inability to pay or the

10:31:02 23 decision not to pay because you didn't have -- you didn't

10:31:05 24 want to spend your money there and then, circumstances

10:31:07 25 have changed.

| | |
|---|---|
| 10:31:09 | 1 |
| 10:31:12 | 2 |
| 10:31:17 | 3 |
| 10:31:20 | 4 |
| 10:31:24 | 5 |
| 10:31:27 | 6 |
| 10:31:33 | 7 |
| 10:31:37 | 8 |
| 10:31:40 | 9 |
| 10:31:46 | 10 |
| 10:31:50 | 11 |
| 10:31:54 | 12 |
| 10:31:57 | 13 |
| 10:32:04 | 14 |
| 10:32:04 | 15 |
| 10:32:06 | 16 |
| 10:32:09 | 17 |
| 10:32:11 | 18 |
| 10:32:12 | 19 |
| 10:32:14 | 20 |
| 10:32:17 | 21 |
| 10:32:17 | 22 |
| 10:32:19 | 23 |
| 10:32:23 | 24 |
| 10:32:26 | 25 |

THE COURT:  But is it really my job?  What I mean by that is, if an examiner determined that an eight-and-a-half-year delay wasn't too long -- I mean, it wasn't lost on the examiner, was it, that -- I mean, it had been around a while.  And if they still allow the patent to be issued on whatever excuse or reason -- again, I don't mean to be pejorative to the inventor, because I don't have any idea why he did what he did.  But if the patent office is aware -- my understanding is on page 10, this is a statement that was made to the patent office of why there was an unintentional delay, and if the patent office says that's okay with them, why should I decide that that wasn't okay?  What authority do I have to do that?

MR. MCGANN:  Well, I think we have the issue of whether the patent office followed its own guidance.  If you look at what they said guidance says, but they didn't follow it.

THE COURT:  Is that for me to decide?

MR. MCGANN:  Well, I think that's one option for your Honor to decide --

THE COURT:  I know the commissioner, I could call him and say -- I've gotten to meet him.  I could say, this seems like a really long time and y'all shouldn't do it. But I'm worried about me, as a judge, saying to an

| | | |
|---|---|---|
| 10:32:31 | 1 | examiner that -- again, I'm -- |
| 10:32:35 | 2 | MR. MCGANN:  Let me step back.  I skipped over. |
| 10:32:38 | 3 | I started to mention the three district court cases that |
| 10:32:40 | 4 | we've cited in our briefing.  It's Fields, Lawman and NYU. |
| 10:32:45 | 5 | The district courts did just that.  They looked at it and |
| 10:32:49 | 6 | said, just like what we have here, the examiner called the |
| 10:32:53 | 7 | attorney of record, and the attorney of record confirmed |
| 10:32:56 | 8 | nothing was submitted that would avoid abandonment. |
| 10:33:02 | 9 | That's the bottom of page 9 of what we provided your |
| 10:33:04 | 10 | Honor.  That fact was present in all three of those cases. |
| 10:33:06 | 11 | It's not -- it's actually not the examiner who |
| 10:33:09 | 12 | decides the petition.  There's a different branch decides |
| 10:33:13 | 13 | the petition prior to the examiner doing it. |
| 10:33:16 | 14 | THE COURT:  So a different division decides |
| 10:33:17 | 15 | whether or not the delay's been too long? |
| 10:33:20 | 16 | MR. MCGANN:  Correct. |
| 10:33:20 | 17 | THE COURT:  And then, it goes back -- if they say |
| 10:33:23 | 18 | it has, then it goes back to the examiner to decide |
| 10:33:26 | 19 | whether or not to allow it? |
| 10:33:28 | 20 | MR. MCGANN:  The office of petitions decides |
| 10:33:30 | 21 | whether to allow the petition to revive, and the examiner, |
| 10:33:32 | 22 | if it's revived, has to continue; and if it's not -- |
| 10:33:34 | 23 | THE COURT:  Doesn't that hurt you because doesn't |
| 10:33:36 | 24 | that tell me that an administrative group at the PTO |
| 10:33:39 | 25 | looked at this issue and said -- and put a little holy |

| | |
|---|---|
| 10:33:44 | 1 |
| 10:33:47 | 2 |

10:33:44  1  water on it and said, this is fine, and sent it back to

10:33:47  2  examiner and then, the examiner allowed it?

10:33:49  3        MR. MCGANN:  Except the three cases that we cited

10:33:52  4  recognize, your Honor, the patent office in that case is

10:33:55  5  not -- has ignored what the examiner did.  The examiner's

10:34:02  6  actions in calling and confirming nothing was submitted.

10:34:06  7  They didn't -- there's no suggestion that it was, oh, we

10:34:08  8  made a mistake, we missed the deadline.  The attorney who

10:34:11  9  was representing the applicant -- and that was applicant's

10:34:14  10  choice.  You know, maybe they didn't, for whatever reason,

10:34:18  11  communicate.  But the attorney told the patent office, no,

10:34:22  12  we didn't submit anything.  There was no unintentional

10:34:24  13  delay.  There was, we're not submitting anything.

10:34:27  14        And in each of the three cases we cited, your

10:34:29  15  Honor, the Fields, Lawman and NYU, had the same fact, and

10:34:33  16  what the courts found was, it was wrong for the office of

10:34:37  17  petitions and patent office to ignore that point that the

10:34:40  18  examiner had found and that there was a deliberately

10:34:44  19  chosen course of action.

10:34:46  20        THE COURT:  Is there anything else you have?

10:34:48  21        MR. MCGANN:  Your Honor, I would -- I think

10:34:51  22  you're probably already on top of it.  If you want to

10:34:54  23  hear, I think the contributory infringement claim other

10:34:57  24  than the intent issues that your Honor's been talking

10:34:59  25  about today, in our case, you also have the situation

| | | |
|---|---|---|
| 10:35:01 | 1 | where in the complaint, there are allegations -- first of |
| 10:35:07 | 2 | all, they're required to allege no substantial |
| 10:35:14 | 3 | non-infringing use.  In order to plead that claim, they |
| 10:35:16 | 4 | have to allege facts to make that inference plausible. |
| 10:35:19 | 5 | THE COURT:  And they didn't. |
| 10:35:21 | 6 | MR. MCGANN:  No.  Not only did they not do it, |
| 10:35:21 | 7 | the facts in the complaint show there are non-infringing |
| 10:35:24 | 8 | uses. |
| 10:35:24 | 9 | THE COURT:  At this stage, I'm more concerned -- |
| 10:35:25 | 10 | I'm more interested in just the fact that they didn't |
| 10:35:28 | 11 | plead it. |
| 10:35:29 | 12 | MR. MCGANN:  They not only didn't plead it, but |
| 10:35:31 | 13 | they included facts that show there are non-infringing |
| 10:35:34 | 14 | uses. |
| 10:35:35 | 15 | THE COURT:  Okay. |
| 10:35:35 | 16 | MR. MCGANN:  If you have no questions. |
| 10:35:37 | 17 | THE COURT:  I don't. |
| 10:35:39 | 18 | MR. MCGANN:  Thank you, your Honor. |
| 10:35:40 | 19 | MR. O'FINAN:  Your Honor, if you'll permit me, I |
| 10:35:41 | 20 | would like to rebut the argument based on the patent |
| 10:35:43 | 21 | office, and Mr. Hansley is much more qualified to go into |
| 10:35:48 | 22 | the other issues that have been raise.  So -- |
| 10:35:50 | 23 | THE COURT:  That's fine. |
| 10:35:50 | 24 | Mr. Shelton, does it make sense for him to go |
| 10:35:53 | 25 | now?  Or would you like to speak for Microsoft and have |

| | | |
|---|---|---|
| 10:35:55 | 1 | him -- |
| 10:35:55 | 2 | MR. O'FINAN:  Oh, I'm sorry, your Honor. |
| 10:35:56 | 3 | THE COURT:  No.  I'm asking you.  I'm happy to |
| 10:35:59 | 4 | take it up.  It was fine for you to stand up.  I just want |
| 10:36:02 | 5 | to figure out between what makes the most sense here. |
| 10:36:05 | 6 | MR. SHELTON:  Your Honor, might make more sense |
| 10:36:06 | 7 | for me to give a very short presentation for Microsoft so |
| 10:36:08 | 8 | that Mr. De La Vega's counsel can -- |
| 10:36:12 | 9 | THE COURT:  I think so, too, because y'all's |
| 10:36:14 | 10 | issues are relatively -- they're overlapping, right? |
| 10:36:17 | 11 | MR. SHELTON:  Yes, your Honor.  They are. |
| 10:36:18 | 12 | THE COURT:  Okay.  Yeah.  We've looked at both |
| 10:36:24 | 13 | the Google and the Microsoft pretty closely.  Go ahead. |
| 10:36:27 | 14 | MR. SHELTON:  Thank you, your Honor. |
| 10:36:27 | 15 | So the Microsoft motion does not have anything |
| 10:36:32 | 16 | about the delay and the abandonment of the application |
| 10:36:37 | 17 | during prosecution, so I won't touch on that.  I'll just |
| 10:36:40 | 18 | say that IBM and Microsoft both filed motions for early |
| 10:36:43 | 19 | bench trial on that issue before your Honor for |
| 10:36:46 | 20 | inequitable conduct and prosecution laches.  So that is |
| 10:36:51 | 21 | very much an issue for Microsoft. |
| 10:36:53 | 22 | THE COURT:  Actually, don't jump over that too |
| 10:36:56 | 23 | quickly here.  Give me one second. |
| 10:37:02 | 24 | MR. SHELTON:  Yes, your Honor. |
| 10:37:12 | 25 | THE COURT:  It seems to me -- and I'm saying this |

| | | |
|---|---|---|
| 10:37:14 | 1 | so counsel can address this, as well, and Google can tell |
| 10:37:19 | 2 | me what they think, as well.  It seems to me that I could |
| 10:37:24 | 3 | probably do that more quickly than I could get to a |
| 10:37:26 | 4 | Markman, right? |
| 10:37:27 | 5 | MR. SHELTON:  Yes, your Honor.  Absolutely. |
| 10:37:29 | 6 | THE COURT:  And so, does Google -- I've lost |
| 10:37:33 | 7 | where the counsel's at -- does Google have any |
| 10:37:36 | 8 | disagreement that a bench trial might be the right way to |
| 10:37:40 | 9 | go on that issue? |
| 10:37:41 | 10 | MR. MCGANN:  Your Honor, the one complication is |
| 10:37:45 | 11 | Google's also filed a motion to transfer. |
| 10:37:47 | 12 | THE COURT:  That is a complication, isn't it?  I |
| 10:37:52 | 13 | don't know what to tell you about that. |
| 10:37:55 | 14 | MR. MCGANN:  It also hasn't been opposed, and the |
| 10:37:57 | 15 | time to oppose is long past.  So the -- |
| 10:38:01 | 16 | THE COURT:  Okay.  So Google would rather have |
| 10:38:02 | 17 | the case transferred than me to dismiss it. |
| 10:38:06 | 18 | MR. MCGANN:  No.  It's not that we would rather |
| 10:38:09 | 19 | have you transfer it, but we wanted to in the interest of |
| 10:38:12 | 20 | discovery -- |
| 10:38:12 | 21 | THE COURT:  I could just not go through the brain |
| 10:38:15 | 22 | damage of all the stuff you just said and let some other |
| 10:38:17 | 23 | judge have the brain damage.  Or Google could not have the |
| 10:38:22 | 24 | case transferred, we could have a bench trial relatively |
| 10:38:25 | 25 | quickly on those issues if I don't decide to dismiss the |

10:38:30  1  case for other reasons.  But I'm not sure you even want me

10:38:36  2  to go through the brain damage of dismissing the case if

10:38:39  3  you would rather me focus on your motion to transfer.

10:38:42  4        MR. MCGANN:  No, your Honor.

10:38:43  5        I was just bringing it up so that we're clear of

10:38:46  6  -- I didn't want to misrepresent the record that this is

10:38:48  7  also why we haven't taken a position on Microsoft and

10:38:53  8  IBM's motion.

10:38:54  9        THE COURT:  I gotcha.  Okay.  Things get

10:38:58 10  complicated.

10:38:59 11        MR. SHELTON:  Yes, your Honor.  But it is

10:39:01 12  actually a very simple issue.  And I do agree with the

10:39:03 13  Court that an early bench trial on inequitable conduct and

10:39:07 14  prosecution laches, we think, would -- under Federal

10:39:10 15  Circuit law that's binding on this court would dispose of

10:39:13 16  this entire case.

10:39:14 17        THE COURT:  Is that what -- you could do that in

10:39:16 18  about -- you could do discovery and be prepared for that

10:39:18 19  kind of hearing in about three months, right?

10:39:20 20        MR. SHELTON:  Absolutely, your Honor.

10:39:22 21        THE COURT:  And we could do a bench trial in

10:39:23 22  probably half a day or a day, at most?

10:39:25 23        MR. SHELTON:  Yes, your Honor.  We said one to

10:39:27 24  two days in our motion for the bench trial.  But the

10:39:29 25  issues are so simple, and there appear to be no fact

| | |
|---|---|
| 10:39:33 | 1 | issues that are in dispute because we'd be relying on the |
| 10:39:38 | 2 | affidavit that was made to the petition for revival and on |
| 10:39:41 | 3 | the statement that was made that -- just give the Court a |
| 10:39:45 | 4 | preview, the statement was made that the abandonment was |
| 10:39:48 | 5 | unintentional but because Mr. De La Vega could not afford |
| 10:39:52 | 6 | to prosecute the patent.  Along the way, though, in those |
| 10:39:55 | 7 | eight-and-a-half years, he bought land, a lot of land, he |
| 10:39:59 | 8 | bought the domain names, he set up websites.  So -- |
| 10:40:02 | 9 | THE COURT:  Things that might be inconsistent |
| 10:40:04 | 10 | with what he said in his declaration. |
| 10:40:06 | 11 | MR. SHELTON:  Correct, your Honor.  And something |
| 10:40:08 | 12 | that your Honor would be uniquely able to deal with |
| 10:40:11 | 13 | because they are, of course, equitable issues that are |
| 10:40:14 | 14 | solely for the province of this court. |
| 10:40:17 | 15 | THE COURT:  Okay. |
| 10:40:19 | 16 | MR. SHELTON:  But turning to our motion to |
| 10:40:22 | 17 | dismiss, your Honor, I just want to bring up a point.  Mr. |
| 10:40:25 | 18 | McGann argued the point about the fact that three |
| 10:40:29 | 19 | defendant actors are required, and so, I won't belabor |
| 10:40:31 | 20 | that.  But I do want to point out for Microsoft that |
| 10:40:35 | 21 | amendment here would be futile, and the reason is that if |
| 10:40:40 | 22 | there was ever an implausible claim of direct |
| 10:40:43 | 23 | infringement, it's this one.  It may be the most |
| 10:40:46 | 24 | implausible one you've seen in a year and a half or |
| 10:40:49 | 25 | throughout your long distinguished career. |

| | | |
|---|---|---|
| 10:40:51 | 1 | THE COURT:  As a dog watching a television. |
| 10:40:54 | 2 | MR. SHELTON:  Some people have said that, not |
| 10:40:55 | 3 | about you, your Honor, but about others. |
| 10:41:00 | 4 | And I just want to point out that the |
| 10:41:02 | 5 | implausibility in the complaint, I think, is highlighted |
| 10:41:05 | 6 | by something in the opposition of Mr. De La Vega, and that |
| 10:41:09 | 7 | is that the lawyers tried to introduce a new theory that |
| 10:41:14 | 8 | instead of the camera being in motion as required by all |
| 10:41:19 | 9 | three independent claims, they now say, citing a web |
| 10:41:24 | 10 | article from someplace in Indiana entitled, Why Do My |
| 10:41:29 | 11 | Hands Have a Nervous Tremor, that your hand moving while |
| 10:41:33 | 12 | you hold a phone and you're not in motion, that the very |
| 10:41:37 | 13 | slight tremor that every person has, that that's motion. |
| 10:41:41 | 14 | That is implausible and, more importantly, that wasn't in |
| 10:41:45 | 15 | the complaint. |
| 10:41:45 | 16 | In fact, I would say, your Honor, that's specious |
| 10:41:48 | 17 | and frivolous.  And if your Honor does not dismiss the |
| 10:41:52 | 18 | complaint against Microsoft with prejudice, this is the |
| 10:41:56 | 19 | beginning of an exceptional case.  The exceptional case |
| 10:41:59 | 20 | started when the complaint was filed.  And I think we will |
| 10:42:01 | 21 | see frivolous allegations like that made in an amended |
| 10:42:09 | 22 | complaint if your Honor were to permit that. |
| 10:42:11 | 23 | But my hope is that we have an early bench trial |
| 10:42:13 | 24 | and deal with the case that way.  Thank you, your Honor. |
| 10:42:15 | 25 | THE COURT:  And, counsel, if you'll give me one |

| | | |
|---|---|---|
| 10:42:17 | 1 | second.  Josh. |
| 10:43:25 | 2 | Counsel, let me tell you what I'm thinking about |
| 10:43:28 | 3 | doing and tell me why this would not be the right thing to |
| 10:43:32 | 4 | do.  Both -- I don't know that Mr. McGann said this, but |
| 10:43:47 | 5 | I'm sure he was thinking it, what Mr. Shelton said, which |
| 10:43:49 | 6 | was that it would be impossible for you to replead.  If he |
| 10:43:56 | 7 | didn't say -- |
| 10:43:56 | 8 | MR. O'FINAN:  I can't hear you, your Honor.  I |
| 10:43:58 | 9 | didn't hear that last word, your Honor. |
| 10:43:59 | 10 | THE COURT:  Okay.  Mr. Shelton suggested that it |
| 10:44:02 | 11 | would be impossible for you to replead. |
| 10:44:05 | 12 | MR. O'FINAN:  To replead.  Okay. |
| 10:44:07 | 13 | THE COURT:  To adequately replead.  Mr. McGann |
| 10:44:09 | 14 | probably thinks the same thing, even if he didn't |
| 10:44:11 | 15 | articulate it in exactly that way.  And so, my plan is to |
| 10:44:18 | 16 | give you two weeks to prove them wrong and amend your |
| 10:44:23 | 17 | pleading. |
| 10:44:26 | 18 | The Court is going to -- when the Court receives |
| 10:44:29 | 19 | it, either I would like for you or your co-counsel, which |
| 10:44:33 | 20 | would be fine, or when Microsoft or Google gets it, if |
| 10:44:37 | 21 | someone will let our court know just that it's been filed. |
| 10:44:40 | 22 | We get a lot of filings and we aren't graded.  You know, a |
| 10:44:44 | 23 | lot of stuff comes in, but once we get your pleading, |
| 10:44:46 | 24 | which will be two weeks, served on counsel, two weeks from |
| 10:44:50 | 25 | today and filed two weeks from today in court, the Court |

| | | |
|---|---|---|
| 10:44:53 | 1 | is not going to wait for Microsoft and Google to have to |
| 10:45:00 | 2 | file anything.  We're going to look at the pleading, and |
| 10:45:05 | 3 | if we find that it's deficient, we will probably dismiss |
| 10:45:09 | 4 | the case sua sponte. |
| 10:45:11 | 5 | I think Mr. McGann did a very good job of |
| 10:45:16 | 6 | highlighting for you the allegations that were not found |
| 10:45:19 | 7 | in the complaint.  I'll give you an example.  A method for |
| 10:45:24 | 8 | selecting streaming image content from a network |
| 10:45:27 | 9 | comprising not addressed in the complaint.  Section that |
| 10:45:31 | 10 | begins with coupling, said realtime streaming image, goes |
| 10:45:34 | 11 | on, not addressed in the complaint, and the actors aren't |
| 10:45:37 | 12 | identified. |
| 10:45:37 | 13 | So basically you have a roadmap for what the |
| 10:45:42 | 14 | defendants say you are unable to do.  Since you filed this |
| 10:45:47 | 15 | case, I'm going to presume you acted in good faith when |
| 10:45:51 | 16 | you filed it originally, and I'm going to assume that you |
| 10:45:53 | 17 | can prove these two fine lawyers incorrect by amending |
| 10:45:58 | 18 | your complaints satisfactorily.  If you do prove them |
| 10:46:02 | 19 | wrong by amending your complaint in a manner that is |
| 10:46:08 | 20 | sufficient, then we will have a bench trial.  I won't be |
| 10:46:13 | 21 | able to give you the date today, but it will be -- we are |
| 10:46:16 | 22 | booked pretty solid in April and May. |
| 10:46:19 | 23 | My deputy clerk just said, dear God, you can't do |
| 10:46:22 | 24 | this, but we will find a date -- she gets madder when I |
| 10:46:28 | 25 | sentence a lot of people because it means she has to do so |

| | |
|---|---|
| 10:46:33 | 1 |

much work that she does the real work.  But we're going to

set a bench trial on the inequitable conduct issue and

because that is -- I think three or four months, should

give both sides an adequate amount of time to do discovery

on the issue.

        Does either -- do the defendants have -- have

they pled in their answers that this might be an

exceptional case?

        MR. SHELTON:  I don't -- well, we haven't

answered, your Honor.  Microsoft has not.  We just filed

the motion to dismiss, but certainly would have if we had

answered.

        THE COURT:  Well, if you answer and if Google

decides that they -- we'll do our best to get the motion

for transfer that accelerates it.  We'll do our best to

rule on the motion to transfer and address that ahead of

time.  If it's granted, then Google won't be at the trial.

        But either way, I would have -- I would have pled

-- I would have made that option available to the Court if

the Court were to find that this were an exceptional case

after either problems with completion of the ability to

amend or after the bench trial.  I think those factors

could still be found with respect to even the equitable

trial that we would have.

        So counsel for De La Vega, tell me what about

10:48:09  1  that process you disagree with.

10:48:11  2  　　　　MR. O'FINAN:  Well, first of all, your Honor, we

10:48:12  3  would object to the bench trial.  I realize it's the

10:48:15  4  Court's call, but we object to that.  We haven't had a

10:48:17  5  chance to respond to that in writing.  And --

10:48:20  6  　　　　THE COURT:  You'll have a chance.

10:48:22  7  　　　　MR. O'FINAN:  I understand that, your Honor, but

10:48:24  8  I'm just saying, I want to be on the record, we object.

10:48:26  9  And I want to put on the record regarding this allegation

10:48:28  10  of inequitable conduct and this regard for the patent

10:48:34  11  office process.  Now, they've the cited to the courts in

10:48:39  12  New York, in Michigan, they're not precedent-setting for

10:48:42  13  this court at all.

10:48:43  14  　　　　However, the Aristocrat Techs case is precedent

10:48:47  15  for this case.  It came after the cases that they're

10:48:50  16  talking about.  And the Federal Circuit essentially said,

10:48:55  17  look, guys, this is not what you should be getting

10:48:58  18  involved in.  It's something that, you know, the patent

10:49:00  19  office has.  It's a process.  That's a legislative issue.

10:49:03  20  They've set up the rules and they follow their rules, and

10:49:07  21  to get into whether the patent office did or didn't do

10:49:10  22  their job correctly.

10:49:11  23  　　　　THE COURT:  I don't think -- and Mr. Shelton

10:49:13  24  could correct me.  I don't think he is -- the bench trial

10:49:18  25  is going to be about -- it's going to be an inequitable

10:49:24   1   conduct issue, is it not?

10:49:26   2          MR. SHELTON:  That is correct, your Honor, and

10:49:27   3   prosecution laches.

10:49:28   4          THE COURT:  And prosecution laches and that takes

10:49:30   5   it out of the concern I had, in my opinion, that I would

10:49:34   6   be grading the papers on how the administrative process

10:49:38   7   worked.  That's why I'm suggesting we have a trial on this

10:49:41   8   issue where I can determine whether or not the inventor

10:49:46   9   did, in fact, act -- did or did not.  I have no way of

10:49:50   10  knowing, but that's -- here's the point.

10:49:56   11         I'm leaving aside, at the moment, in setting that

10:50:01   12  trial the point that Google made.  There is no question,

10:50:05   13  whether it be in three months or it be a year and a half

10:50:08   14  now from when the trial ordinarily would be, we would have

10:50:12   15  -- I'm assuming Microsoft is planning on making an

10:50:14   16  inequitable conduct affirmative defense, at some point,

10:50:18   17  correct?

10:50:18   18         MR. SHELTON:  Yes, your Honor.

10:50:19   19         THE COURT:  All I'm doing is making -- for the

10:50:22   20  record, since you're objecting -- and you have every right

10:50:24   21  to.  I'm not quarreling with that.  But I'm making

10:50:29   22  determination, which I think is not only within my power,

10:50:34   23  which I'm supposed to do, which is, what is the most

10:50:37   24  economically judicious way to handle this case?

10:50:40   25         I think the defendants have put on at least a --

| | | |
|---|---|---|
| 10:50:44 | 1 | I mean, I heard for all morning about how I should -- from |
| 10:50:47 | 2 | the plaintiff's side, why if they allege something, you |
| 10:50:51 | 3 | know, I should take it in consideration.  The defendants |
| 10:50:54 | 4 | have made a colorable argument that they are going to |
| 10:50:57 | 5 | present an inequitable conduct claim. |
| 10:51:00 | 6 | I think it makes more economic sense to resolve |
| 10:51:04 | 7 | that, rather than have either side waste its time or the |
| 10:51:09 | 8 | Court's time on a Markman if that would within three |
| 10:51:13 | 9 | months resolve the case. |
| 10:51:15 | 10 | MR. O'FINAN:  Your Honor, with all due respect to |
| 10:51:17 | 11 | the Court and to the opposition here, they're complaining |
| 10:51:22 | 12 | that they want this case dismissed because the complaint |
| 10:51:24 | 13 | is insufficient, yet, they come along and say this guy's |
| 10:51:28 | 14 | lying to the patent office, without any evidence |
| 10:51:30 | 15 | whatsoever, and that warrants a discovery and put this guy |
| 10:51:34 | 16 | through the gristmill but he's -- |
| 10:51:36 | 17 | THE COURT:  He's going to go through it, anyway. |
| 10:51:38 | 18 | MR. O'FINAN:  Your Honor, but the allegation of |
| 10:51:39 | 19 | misconduct is baseless and it's not -- they cited -- he |
| 10:51:44 | 20 | tried to recite a fact which is not a fact.  He's made an |
| 10:51:47 | 21 | allegation against somebody that he's saying, well, this |
| 10:51:49 | 22 | guy bought property.  He has no idea how he acquired -- he |
| 10:51:53 | 23 | just says he owns property -- |
| 10:51:53 | 24 | THE COURT:  Counsel, exceptional case works both |
| 10:51:55 | 25 | ways. |

10:51:56    1          MR. O'FINAN:  Well, your Honor, he's making a

10:51:57    2    false allegation.

10:51:58    3          THE COURT:  Well, if we -- you know, I think the

10:52:03    4    country's been through like three -- a week of that in the

10:52:07    5    Senate where no one seems to care what anyone says.

10:52:10    6          Here's what I care about in my courtroom.  If you

10:52:14    7    bring a lawsuit that you shouldn't have brought, then you

10:52:19    8    are at some peril.  If Microsoft and Google bring an

10:52:24    9    allegation of inequitable conduct that they shouldn't have

10:52:27   10    brought, then they're equally at peril.  All I'm doing is

10:52:31   11    trying to figure out, what is the most efficient way to

10:52:34   12    resolve this case?

10:52:34   13          I'm not going to leave here today thinking

10:52:37   14    anything about your inventor, that he was a good or bad

10:52:40   15    person, or that anything that Mr. Shelton just said is or

10:52:43   16    is not correct.  There will be a time and place for that.

10:52:48   17    It's going to be a trial, either in this courtroom or in

10:52:52   18    Waco, where Microsoft is going to get to put on evidence,

10:52:56   19    you're going to get to put on evidence, and at the end of

10:52:58   20    the day, one of you will win, and it may or may not be an

10:53:00   21    exceptional case for the loser.

10:53:03   22          That's all I'm saying.  It's going to have to --

10:53:06   23    I'm going to have to decide that at some point, anyway.

10:53:09   24    It's not going to happen, and all I'm doing is expediting

10:53:13   25    it happening so that the Court doesn't lose time and the

10:53:17  1  parties don't lose time if that's the most efficient way

10:53:20  2  to do it.

10:53:21  3       Let me make clear, I'm not casting aspersions of

10:53:24  4  any kind on your client.  I'm just -- I'm doing what I

10:53:31  5  think is the most efficient thing I can do.  So you have

10:53:33  6  your objection.

10:53:34  7       MR. O'FINAN:  Okay, Judge.

10:53:35  8       THE COURT:  And you also have that in two weeks

10:53:38  9  from Friday, I anticipate -- I mean, it may be obviated.

10:53:45  10  There may not be a hearing if you all -- if Mr. Shelton

10:53:48  11  and Mr. McGann are correct that you can't adequately plead

10:53:52  12  this.  I will be as clear as possible.  I am very

10:53:56  13  skeptical that you can.  We have looked at the patent,

10:54:01  14  everything that defense articulated.  We've -- my clerk

10:54:06  15  and I have had exactly the same concerns as we looked at

10:54:11  16  the patent.

10:54:14  17       I don't want to go over and over this, but I

10:54:15  18  actually, you know -- they actually let me try these

10:54:18  19  cases, and I know what they're talking about.  I've dealt

10:54:22  20  with these issues before and raised them on both sides.  I

10:54:25  21  have the same concerns about your ability to adequately

10:54:29  22  plead that had been raised here.

10:54:32  23       I am an eternal optimist and I'm assuming you're

10:54:37  24  going to be able to address those concerns in the next two

10:54:39  25  weeks and file an amended complaint that adequately sets

| | | |
|---|---|---|
| 10:54:43 | 1 | forth all of the claims that you're supposed to do.  But |
| 10:54:48 | 2 | that -- you know, can you do it or not?  I don't know. |
| 10:54:51 | 3 | We'll see in two weeks. |
| 10:54:52 | 4 | MR. O'FINAN:  We'll see, Judge. |
| 10:54:53 | 5 | THE COURT:  And after that, you know, you're |
| 10:54:55 | 6 | going to have to go through infringement contentions and, |
| 10:54:58 | 7 | you know, present those, as well.  I'm going to stay all |
| 10:55:01 | 8 | of that stuff until we have the bench trial.  Nothing will |
| 10:55:08 | 9 | happen in this case other than your amending the |
| 10:55:12 | 10 | pleadings.  We will review them and determine whether or |
| 10:55:15 | 11 | not they're adequate and whether the case remains extant. |
| 10:55:20 | 12 | If it does, then we'll be telling you when to come to |
| 10:55:22 | 13 | court for a bench trial on the issues of inequitable |
| 10:55:26 | 14 | conduct and laches. |
| 10:55:30 | 15 | MR. O'FINAN:  Okay, Judge.  Thank you. |
| 10:55:31 | 16 | THE COURT:  Anything else? |
| 10:55:32 | 17 | MR. SHELTON:  No, your Honor.  Not from |
| 10:55:33 | 18 | Microsoft. |
| 10:55:33 | 19 | THE COURT:  Mr. McGann, I don't know exactly |
| 10:55:36 | 20 | where that puts Google, who doesn't want to be here, and |
| 10:55:40 | 21 | so, y'all will have to figure out that.  But if you would |
| 10:55:44 | 22 | like to come up here, along with Mr. Sanders, and I can |
| 10:55:48 | 23 | swear you in. |
| 10:55:51 | 24 | MR. HANSLEY:  Your Honor, I'd like to address the |
| 10:55:52 | 25 | Court, if I may. |

| | | |
|---|---|---|
| 10:55:53 | 1 | THE COURT:  Okay.  You may. |
| 10:55:54 | 2 | MR. HANSLEY:  So in this case, we filed the cases |
| 10:56:00 | 3 | under a test theory.  And so, the defendants are missing |
| 10:56:04 | 4 | the point completely.  So on a direct infringement claim, |
| 10:56:09 | 5 | if there's multiple actors and you're claiming direct |
| 10:56:14 | 6 | infringement, then I get that there has to be some |
| 10:56:17 | 7 | direction or control.  Usually you're under a contract to |
| 10:56:19 | 8 | do something, and that's the context that you see it in. |
| 10:56:24 | 9 | But whenever you test your product and you're a |
| 10:56:28 | 10 | big company like Google and Microsoft, and just as |
| 10:56:33 | 11 | Intellectual Ventures mentioned in their argument, they |
| 10:56:36 | 12 | have multiple layers of due diligence when they make a |
| 10:56:41 | 13 | product, they've been sued for patent infringement so many |
| 10:56:44 | 14 | times, they have whole groups within their company that |
| 10:56:48 | 15 | scour the USPTO website database, looking for something |
| 10:56:53 | 16 | that resembles what they're about to do.  They probably |
| 10:56:56 | 17 | have records of that. |
| 10:56:58 | 18 | Also, they -- so they're able to do it in |
| 10:57:11 | 19 | litigation.  They're able to do prior art searches.  They |
| 10:57:16 | 20 | contract with firms that have third parties that do it for |
| 10:57:19 | 21 | a living.  You could pay $5,000 and have it done.  And so, |
| 10:57:27 | 22 | I don't see why I would need to include a specific |
| 10:57:30 | 23 | instance of testing in the complaint because I don't have |
| 10:57:35 | 24 | to conclude a specific instance of a sale being made for |
| 10:57:41 | 25 | the sale of an infringing product.  But we know that sales |

| | | |
|---|---|---|
| 10:57:44 | 1 | are happening, and there's no requirement that I have to |
| 10:57:47 | 2 | buy the accused instrumentality to file the case. |
| 10:57:50 | 3 | And so, it's basically the same logic.  You know |
| 10:57:55 | 4 | that a sale's happening because you see indicia of the |
| 10:57:58 | 5 | sale, but you didn't personally witness the sale of the |
| 10:58:02 | 6 | accused instrumentality, but you know it's happening.  And |
| 10:58:06 | 7 | I know that testing is happening.  I know these companies |
| 10:58:10 | 8 | are testing their product before they put it on the |
| 10:58:13 | 9 | market.  It would be a DTPA in Texas if they didn't do so |
| 10:58:17 | 10 | because, inevitably, it would not work. |
| 10:58:20 | 11 | And, frankly, Google has a history of rushing to |
| 10:58:23 | 12 | market.  We all know that.  But I don't think they rush |
| 10:58:27 | 13 | that much.  They don't make a product and just say, well, |
| 10:58:32 | 14 | we hope this works. |
| 10:58:33 | 15 | THE COURT:  So the universe of infringement that |
| 10:58:36 | 16 | you think you'll be able to prove is that Microsoft and |
| 10:58:39 | 17 | Google tested this product before it went on -- |
| 10:58:39 | 18 | MR. HANSLEY:  They test the product -- |
| 10:58:45 | 19 | THE COURT:  -- and that's the universe of the |
| 10:58:45 | 20 | amount of infringement you're going to be able to show? |
| 10:58:48 | 21 | MR. HANSLEY:  They tested the product and but |
| 10:58:50 | 22 | for testing the product -- |
| 10:58:50 | 23 | THE COURT:  I get that, but I'm saying that's the |
| 10:58:52 | 24 | amount of infringement you're going to be able to show is |
| 10:58:57 | 25 | when Google and Microsoft were testing the product -- |

| | | |
|---|---|---|
| 10:59:00 | 1 | you're going to go to trial and ask for damages against |
| 10:59:04 | 2 | Google and Microsoft because, assuming you're right, they |
| 10:59:09 | 3 | did this in a manner where before they released the |
| 10:59:12 | 4 | product and they were testing it -- what is your theory of |
| 10:59:15 | 5 | damages? |
| 10:59:16 | 6 | MR. HANSLEY:  Before I answer your question, in |
| 10:59:20 | 7 | this country, we're allowed to sue somebody for spitting |
| 10:59:22 | 8 | on us and that's a battery.  A civil battery.  I learned |
| 10:59:26 | 9 | that in law school.  You can sue somebody for spitting on |
| 10:59:29 | 10 | you. |
| 10:59:30 | 11 | THE COURT:  Why don't you answer my question. |
| 10:59:32 | 12 | My question was, I'm going to -- just for sake of |
| 10:59:35 | 13 | argument.  Let's presume that Microsoft and Google both |
| 10:59:40 | 14 | did what you said they did and infringed your patent |
| 10:59:43 | 15 | during the process of coming up with theirs -- their |
| 10:59:46 | 16 | product.  What is your damage theory? |
| 10:59:50 | 17 | MR. HANSLEY:  My damage theory -- and I've had it |
| 10:59:53 | 18 | somewhat litigated in the Eastern District of Texas.  I |
| 10:59:56 | 19 | had motion to dismiss filed based on no testing |
| 11:00:00 | 20 | allegations in the complaint, and it was a test read in |
| 11:00:04 | 21 | the Eastern District of Texas.  Just to give you a history |
| 11:00:06 | 22 | of -- |
| 11:00:06 | 23 | THE COURT:  I don't need a history.  I want to |
| 11:00:08 | 24 | know what your -- I want to know how you would prove a |
| 11:00:14 | 25 | quantum of damages because Google tested their product. |

| | | |
|---|---|---|
| 11:00:18 | 1 | How much money would you get in a royalty for that? |
| 11:00:22 | 2 | MR. HANSLEY:  Well, we haven't retained a damages |
| 11:00:24 | 3 | expert yet, but I -- |
| 11:00:24 | 4 | THE COURT:  What do you think?  What would you be |
| 11:00:26 | 5 | asking for if you came in and proved that Microsoft and |
| 11:00:30 | 6 | Google had actually once or twice tested this and that was |
| 11:00:33 | 7 | the entire universe of their infringement? |
| 11:00:37 | 8 | MR. HANSLEY:  Respectfully, your Honor, I'm not |
| 11:00:39 | 9 | an economist.  I'm an electrical engineer undergrad and I |
| 11:00:44 | 10 | graduated cum laude from SMU Law School. |
| 11:00:48 | 11 | THE COURT:  But I need an answer to my question. |
| 11:00:51 | 12 | And here, I mean, I allow -- you asked if you could speak |
| 11:00:53 | 13 | and you could.  Again, if you were to prove that they did |
| 11:01:05 | 14 | that, would it be infringement?  Maybe it would.  I can't |
| 11:01:09 | 15 | imagine the damages theory on that. |
| 11:01:14 | 16 | MR. HANSLEY:  But for the testing, they wouldn't |
| 11:01:16 | 17 | put out a product. |
| 11:01:18 | 18 | THE COURT:  Right.  Okay.  At any rate, how is |
| 11:01:26 | 19 | that germane to anything that I said? |
| 11:01:30 | 20 | MR. HANSLEY:  I'm sorry? |
| 11:01:32 | 21 | THE COURT:  How is what you raised with me |
| 11:01:34 | 22 | germane to anything I said about what we're going to do? |
| 11:01:38 | 23 | What was the point in you telling me that? |
| 11:01:42 | 24 | MR. HANSLEY:  Of the damages? |
| 11:01:45 | 25 | THE COURT:  What was the point of you telling me |

| | |
|---|---|
| 11:01:47 | 1 |
| 11:01:52 | 2 |
| 11:01:55 | 3 |
| 11:01:59 | 4 |
| 11:02:03 | 5 |
| 11:02:07 | 6 |
| 11:02:12 | 7 |
| 11:02:12 | 8 |
| 11:02:15 | 9 |
| 11:02:19 | 10 |
| 11:02:21 | 11 |
| 11:02:23 | 12 |
| 11:02:27 | 13 |
| 11:02:32 | 14 |
| 11:02:38 | 15 |
| 11:02:44 | 16 |
| 11:02:46 | 17 |
| 11:02:49 | 18 |
| 11:02:50 | 19 |
| 11:02:51 | 20 |
| 11:02:53 | 21 |
| 11:02:55 | 22 |
| 11:03:00 | 23 |
| 11:03:04 | 24 |
| | 25 |

1   that you think they infringed while they were testing?

2          MR. HANSLEY:  Because they are -- because you're

3   going to have us replead, and I feel like we can't really

4   replead and do any better.  We have screen shots in the

5   complaint of -- we had our Rule 11 charts in the complaint

6   with pictures and text describing their product, like

7   perfectly.

8          THE COURT:  Well, then, how about this solution.

9   If you are telling me you can't do any better.

10          MR. HANSLEY:  We could always do better but I --

11          THE COURT:  I'm hoping you can because if what

12   you're saying is you can't do any better, then I'm going

13   to just dismiss the cases now.  Because if you want to go

14   with what you have pled right now, I will -- I'll tell you

15   what.  That's what I'm going to do.  I'm going to take you

16   at your word that you can't do any better.  I'm going to

17   find that the pleadings that you have are inadequate.

18          MR. HANSLEY:  Well, I didn't --

19          THE COURT:  And I'm going --

20          MR. HANSLEY:  I didn't say I can't do any better.

21          THE COURT:  And I'm going to dismiss your cases

22   and you can take them up.  That's all I have.

23          Gentlemen, I will swear you in at this time.

24          (End of proceedings.)

25

```
1                        *  *  *  *  *  *

2

3

4   UNITED STATES DISTRICT COURT  )

5   WESTERN DISTRICT OF TEXAS)

6

7      I, LILY I. REZNIK, Certified Realtime Reporter,

8   Registered Merit Reporter, in my capacity as Official

9   Court Reporter of the United States District Court,

10  Western District of Texas, do certify that the foregoing

11  is a correct transcript from the record of proceedings in

12  the above-entitled matter.

13     I certify that the transcript fees and format comply

14  with those prescribed by the Court and Judicial Conference

15  of the United States.

16     WITNESS MY OFFICIAL HAND this the 6th day of February,

17  2020.

18

19

20                           /s/Lily I. Reznik
                             LILY I. REZNIK, CRR, RMR
21                           Official Court Reporter
                             United States District Court
22                           Austin Division
                             501 W. 5th Street,
23                           Suite 4153
                             Austin, Texas 78701
24                           (512)391-8792
                             Certification No. 4481
25                           Expires: 1-31-21
```